119 F.3d 415
 21 Employee Benefits Cas. 1341,
Pens. Plan Guide (CCH) P 23937J
METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,
v.
Julie A. MARSH, Defendant-Appellee,
Dana Lyn Weaver and James R. Marsh, III, Defendants-Appellants.
 No. 96-1270.
 United States Court of Appeals,
Sixth Circuit.
 Submitted April 29, 1997.
Decided July 15, 1997.
 
 Thomas E. Chittle, Flint, MI, for Plaintiff.
 J. Edmund Frost (briefed), Bay City, MI, for Defendant-Appellee Julie A. Marsh.
 Mark A. Kolka (briefed), Allsopp, Kolka & Wackerly, Bay City, MI, for Defendants-Appellants Dana Lyn Weaver, James R. Marsh, III.
 Before: BROWN, KENNEDY, and BOGGS, Circuit Judges.
 OPINION
 KENNEDY, Circuit Judge.
 
 
 1
 This is an interpleader action to determine who is entitled to the proceeds of a life insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Decedent's widow claims as his last designated beneficiary under the policy, while decedent's children from his first marriage claim under a divorce decree that allegedly requires that they be named as the beneficiaries of two-thirds of the insurance proceeds. The District Court granted summary judgment to the widow on the ground that the terms of the plan controlled, because the divorce decree did not constitute a qualified domestic relations order ("QDRO") and was therefore preempted by ERISA. Decedent's children appeal. We conclude the divorce decree substantially complies with ERISA's QDRO provisions and excepts it from ERISA's preemption provisions. Accordingly, we shall REVERSE.
 
 I. Facts
 
 2
 This case arises out of a dispute over the proceeds of a life insurance policy insuring the life of James R. Marsh, Jr. ("James"), which was issued by Metropolitan Life Insurance Company ("Met Life"). James, an employee of General Motors Corporation, was a participant in the General Motors Life and Disability Program ("Plan"). The Plan included "basic life insurance" through Met Life. With regard to this insurance, the Plan provided that "[i]f the Employe dies while insured for Basic Life Insurance under the Group Policy, the amount of Basic Life Insurance in force on account of the Employe at the date of the Employe's death shall be paid to the Beneficiary of record." The Plan defined "beneficiary" as "the person or persons designated by the Employe, on a form approved by the Insurance Company and filed with the records maintained in connection with the insurance under the Group Policy to receive upon the Employe's death the amount of the Basic Life Insurance then payable." The Plan further provided that "[t]he Employe [sic] may change the Beneficiary at any time by filing written notice thereof on such a form with the Employer or the Insurance Company. Consent of the Beneficiary shall not be requisite to any change of Beneficiary."
 
 
 3
 Appellants, James R. Marsh, III and Dana Lyn Weaver, are the children of James and Linda Marsh, n.k.a. Linda Davidson ("Linda"). On October 31, 1978, James and Linda divorced. The judgment of divorce which incorporated James' and Linda's property settlement provided the following under a section entitled "Statutory Insurance Provision":
 
 
 4
 IT IS FURTHER ORDERED AND ADJUDGED that all rights of either party in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the other in which he or she was named or designated as beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the owner of such policy or such named beneficiary as he or she shall affirmatively designate except that the minor children of the parties shall be named as beneficiaries to the extent of two thirds (2/3) of the proceeds of Plaintiff's insurance through Metropolitan Life Insurance Company, maintained at his place of employment.
 
 
 5
 (emphasis added). Under a section entitled "Custody of Children," the "minor children of the parties" are identified as "DANA LYN MARSH, born August 24, 1965; and JAMES R. MARSH, III., born December 7, 1967."
 
 
 6
 James filed a beneficiary designation in connection with the Met Life life insurance policy seven times during the over twenty-nine years that he was a plan participant. On the date of his death on January 2, 1995, the last designation of record was dated January 18, 1989, and named appellee Julie A. Marsh, his widow, as the sole beneficiary.
 
 
 7
 On January 10, 1995, appellants gave notice to Met Life that, pursuant to their parents' divorce decree, they were entitled to two-thirds of the life insurance benefits. Appellee filed her formal claim to the entirety of the benefit proceeds on January 20, 1995. On May 25, 1995, Met Life filed a complaint of interpleader, which named appellants and appellee as defendants. The District Court dismissed Met Life after the insurance company deposited $51,043.21, the proceeds of James' policy plus interest, with the clerk of the court.
 
 
 8
 On January 17, 1995, the District Court held a hearing on cross-motions for summary judgment. The court found that the case turned on the question whether the judgment of divorce was a qualified domestic relations order under ERISA. It concluded that it was not because it did not meet certain of the statutory requirements and that therefore the terms of the plan controlled. Accordingly, the court awarded the benefits to appellee. Appellants appeal that decision.
 
 II. Discussion
 A. Standing
 
 9
 We must initially determine whether we have subject matter jurisdiction over this action. Appellee argues that appellants do not have standing to assert an ERISA cause of action because they are neither plan participants nor plan beneficiaries. ERISA section 502(a) limits those who can bring ERISA causes of action to plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. See 29 U.S.C. § 1132(a). Our jurisdiction over ERISA-related questions is defined and limited by ERISA section 502(a). See id. § 1132(e). Thus, we have subject matter jurisdiction over suits brought by parties who have standing to assert a cause of action pursuant to section 502(a). However, appellee wrongly focuses on appellants' standing, apparently overlooking the fact that Met Life brought this action.
 
 
 10
 Met Life brought this interpleader action pursuant to FED.R.CIV.P. 22. Rule 22(1) interpleader allows a party to join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability. This permits the insurance company, the stakeholder who has no claim to the money and is willing to release it to the rightful claimant, " 'to put the money ... in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court.' " Commercial Union Ins. Co. v. United States, 999 F.2d 581, 583 (D.C.Cir.1993) (quoting Zechariah Chaffee, Jr., The Federal Interpleader Act of 1936: I, 45 YALE L.J. 963, 963 (1936)).[1]
 
 
 11
 Rule 22(1) provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts. See FED.R.CIV.P. 82; Commercial Nat'l Bank of Chicago v. Demos, 18 F.3d 485, 488 (7th Cir.1994). Thus, for interpleader to be proper under Rule 22(1), the action must be based on a statutory grant of jurisdiction. See Gelfgren v. Republic Nat'l Life Ins. Co., 680 F.2d 79, 81 (9th Cir.1982). Met Life asserts in its complaint that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because its claim arises under ERISA.[2] In its complaint, Met Life asserts a cause of action under ERISA section 502(a)(3)(B)(ii), which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). Met Life alleges that "as claims fiduciary, [it] processes all claims for [basic life insurance] benefits" under the plan and that it cannot safely determine the proper beneficiary of the benefits due.
 
 
 12
 Met Life has standing to assert a cause of action pursuant to § 1132(a)(3)(B)(ii), and we therefore have subject matter jurisdiction to hear this interpleader action. First, Met Life alleges that it is the "claims fiduciary." This Court has held that "[w]hen an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)." Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut., 982 F.2d 1031, 1035 (6th Cir.1993). Appellee does not dispute that Met Life is a fiduciary. Second, an interpleader action is equitable for purposes of ERISA. Some courts have held that they do not have federal jurisdiction over suits brought by insurance companies seeking declarations of liability under a policy, because such suits do not seek equitable relief. See, e.g., Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249, 1251-52 (9th Cir.1987); Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1523 (11th Cir.1987). However, interpleader is fundamentally equitable in nature. See Commercial Union Ins. Co., 999 F.2d at 588-89. In sum, Met Life has properly asserted a cause of action pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii), and this action arises under federal law. Therefore, it does not matter whether appellants have standing to assert an ERISA cause of action.[3]B. Standard of Review
 
 
 13
 Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, 128 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997). The facts in this case are essentially undisputed, and the District Court granted judgment in favor of Julie Marsh as a matter of law. We review the District Court's grant of summary judgment de novo. See Pressley, 82 F.3d at 128.
 
 C. ERISA Analysis
 
 14
 Appellants argue that ERISA prohibits the alienation or assignment of pension plan benefits, but that it does not prohibit the alienation or assignment of welfare plan benefits. Therefore, appellants assert that because the plan involved in this case is a welfare plan,[4] the exception to ERISA's anti-alienation provision for qualified domestic relations orders (QDROs) does not apply. Appellants consequently maintain that the state divorce decree need not meet QDRO requirements and that the court should not be limited by ERISA in determining the proper beneficiary of the life insurance benefits.
 
 
 15
 ERISA section 206(d)(1) requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In 1984, Congress amended ERISA through passage of the Retirement Equity Act (REA) of 1984, Pub.L. No. 98-397, 98 Stat. 1426, in an effort to guarantee that private retirement-income systems would provide fair treatment for women. See Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 838, 108 S.Ct. 2182, 2190, 100 L.Ed.2d 836 (1988). Among REA's provisions was an amendment to ERISA section 206(d) providing that the prohibition on alienation and assignment of pension benefits "shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). A QDRO is defined as a domestic relations order that, so far as relevant here, "assigns to an alternate payee the right to ... receive all or a portion of the benefits payable with respect to a participant under a plan." Id. § 1056(d)(3)(B)(i)(I). In order to qualify as a QDRO, a domestic relations order must meet certain prescribed standards. See id. § 1056(d)(3).
 
 
 16
 We agree with appellants that ERISA's anti-alienation provision applies only to pension plans. By its terms, § 1056(d)(1) does not apply to welfare plans. Indeed, ERISA expressly provides that §§ 1051-1061 shall not apply to employee welfare benefit plans. See id. § 1051.[5] The Supreme Court has explained:ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA pension benefit plans. 29 U.S.C. 1056(d)(1). Congress did not enact any similar provision applicable to ERISA welfare plans, such as the one at issue in this case.... In a comprehensive regulatory scheme like ERISA, such omissions are significant.
 
 
 17
 Mackey, 486 U.S. at 836-37, 108 S.Ct. at 2189; see also In re Lucas, 924 F.2d 597, 602 n. 9 (6th Cir.1991).
 
 
 18
 If this were all that ERISA had to say on the matter, appellants would be right that a divorce decree could assign welfare benefits regardless of whether the decree was a QDRO, because only the assignment of pension benefits would require the strictures of a QDRO. Yet, ERISA does have more to say, and our inquiry into the applicability of ERISA and the QDRO provisions does not end with § 1056(d). Specifically, Congress mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).
 
 
 19
 This court has held that the designation of beneficiaries has a connection with or reference to an ERISA plan, thereby preempting state law. See Pressley, 82 F.3d at 129; McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir.1990), remanded on reh'g mem., 922 F.2d 841 (6th Cir.1990) (table); accord Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1325 (5th Cir.1994); Krishna v. Colgate Palmolive Co., 7 F.3d 11, 14-15 (2d Cir.1993); Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904, 906 (10th Cir.1991); Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1196 (11th Cir.1991); MacLean v. Ford Motor Co., 831 F.2d 723, 727-28 (7th Cir.1987). We have held that ERISA itself supplies the rule of law for determining the beneficiary. Pressley, 82 F.3d at 130; McMillan, 913 F.2d at 311. Specifically, section 404(a)(1)(D) of ERISA requires that a plan administrator discharge his duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The court in McMillan, and again in Pressley, found that this section establishes a clear mandate that plan administrators follow plan documents to determine the designated beneficiary. See Pressley, 82 F.3d at 130; McMillan, 913 F.2d at 312. See also, Boggs v. Boggs, 520 U.S. 833, ----, 117 S.Ct. 1754, 1764, 138 L.Ed.2d 45 (1997) (Congress intended to preempt nonbeneficiary nonparticipant interests in ERISA retirement plans).
 
 
 20
 The Eighth Circuit has held that state divorce decrees are outside the scope of ERISA's general preemption provision. See, e.g., Equitable Life Assurance Soc'y of the U.S. v. Crysler, 66 F.3d 944, 948 (8th Cir.1995) (holding that ERISA does not "entirely" preempt the effect of a state-law divorce decree on the rights of a welfare benefit plan's participants and beneficiaries); see also Metropolitan Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1086 (7th Cir.1994) (Manion, J., concurring) (opining that ERISA preemption does not reach as far as the assignment of welfare plan benefits and stating that the court should dismiss the case on the ground that federal law was not implicated). The Crysler court and Judge Manion in Wheaton relied on Mackey, 486 U.S. at 826, 108 S.Ct. at 2183-84, in which the Supreme Court held that ERISA does not preempt state-law garnishment of ERISA welfare plan benefits.
 
 
 21
 We believe that Mackey's holding that garnishment laws of general application are not preempted does not extend to divorce decrees naming beneficiaries under ERISA plans. General garnishment laws provide a procedure for the attachment of money in order to satisfy a debt. ERISA does not address this issue in terms of welfare plans. Thus, in Local Union 212, International Brotherhood of Electrical Workers Vacation Trust Fund v. Local 212 International Brotherhood of Electrical Workers Credit Union, 735 F.2d 1010 (6th Cir.1984), we affirmed the district court and adopted its opinion, which held that ERISA does not preempt state garnishment laws as applied to welfare plans, in part because ERISA did not speak to such matters and "[i]n order for pre-emption to even come into play, there must be some express or implied provision of ERISA which addresses the matter", Local Union 212, IBEW Vacation Trust Fund v. Local 212 IBEW Credit Union, 549 F.Supp. 1299, 1302 (S.D.Ohio 1982). In contrast, with regard to the designation of beneficiaries of welfare benefits, § 1104(a)(1)(D) "establish[es] a clear mandate that plan administrators follow plan documents to determine the designated beneficiary." Pressley, 82 F.3d at 130 (citing McMillan, 913 F.2d at 312). Moreover, in this case we are faced with a state court, through a divorce decree, deciding how a welfare plan must determine the beneficiary of welfare plan benefits. Such a matter is directly within the scope of the plan's authority. Additionally, the State's method of designation directly conflicts with § 1104(a)(1)(D) and the plan documents, which direct the plan administrator to provide the benefits to the last named beneficiary. Applying state law to determine the beneficiary under the terms of a state divorce decree would not only relate to a plan, but would interfere with the administration of a plan and violate its terms. Cf. MacLean, 831 F.2d at 728 (discussing ERISA preemption of state testamentary transfer law). Therefore, James' and Linda's divorce decree is preempted by the general preemption clause by ERISA unless saved by 29 U.S.C. § 1144(b)(7).
 
 
 22
 However, we agree with the Tenth Circuit in Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114 (10th Cir.1991), that 29 U.S.C. § 1144(b)(7) excepts QDROS from ERISA preemption with respect to welfare plans as well as pension plans. Section 1144(a) is the preemption provision of ERISA. Section 1144(b)(7) provides that
 
 
 23
 Subsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title), qualified medical child support orders (within the meaning of section 1169(a)(2)(A) of this title)....
 
 
 24
 Section 1056(d)(3)(B)(i) sets out the particulars needed to make a domestic relations order qualified under ERISA. While section 1056 relates solely to pension plans, we do not believe § 1144(b)(7)'s exception to preemption is limited to pension plans. "[W]ithin the meaning of section 1169(a)(2)(A)" merely provides the definitional requirements for QDROS and the required procedures. The Tenth Circuit has held that the QDRO rules can apply to a welfare plan:
 
 
 25
 Because the reference in the preemption clause to section 1056(d)(3)(B)(i) does not restrict application of the statutory preemption exception to pension benefit plans, however, we interpret the exception to apply to all qualifying domestic relation[s] orders whether they involve a pension or welfare benefit plan. Taken together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption.
 
 
 26
 Carland, 935 F.2d at 1119-20.
 
 
 27
 The Seventh Circuit reached the same conclusion in Wheaton, where it concluded that
 
 
 28
 the literal reading of ERISA as amended by the Retirement Equity Act, a reading that establishes an exception to preemption for qualified domestic relations orders pertaining to all ERISA plans, not just pension plans, makes more practical sense than a flexible reading that gives weight to the history of the provision and to the fact that the provisions that surround the definition of qualified domestic relations orders, including the anti-alienation provision, are limited to pension plans, though the definition is not.
 
 
 29
 42 F.3d at 1084. We turn, then, to whether the divorce decree here qualified as a QDRO.
 
 
 30
 Section 1056(d)(3) sets forth ERISA's requirements as follows:
 
 
 31
 (B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which--
 
 
 32
 (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and
 
 
 33
 (II) is made pursuant to a State domestic relations law (including a community property law).
 
 
 34
 (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
 
 
 35
 (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
 
 
 36
 (iii) the number of payments or period to which such order applies, and
 
 
 37
 (iv) each plan to which such order applies.
 
 
 38
 The District Court held that the divorce decree here did not meet these requirements. First, the Court found it deficient because it did not specify the amount or percentage of each child's benefits, rather it provided that the two minor children should receive two-thirds of the policy. The decree was thus very clear regarding the percentage they collectively should receive. Confronted with this same problem, the Seventh Circuit in Wheaton concluded, in a case arising in Wisconsin, that since the Wisconsin law of wills and law of trusts, as well as insurance law, would presume equal distribution, the plan administrator would run no significant risk in dividing the sum equally and that
 
 
 39
 [t]he domestic relations order was therefore specific enough to serve ERISA's purposes. To require more specificity would defeat the purpose of the provision creating an exception to inalienability for qualified domestic relations orders, at least in the present case, and for a purely theoretical gain in certainty.
 
 
 40
 42 F.3d at 1085. Here, too, Michigan ordinarily presumes equal distribution.
 
 
 41
 Absent indication to the contrary, a devise to a class whose members are related to the testator in equal degrees is presumed to be per capita rather than per stirpes. Van Gallow v. Brandt, 168 Mich. 642, 649, 134 N.W. 1018.
 
 
 42
 Rendle v. Wiemeyer, 374 Mich. 30, 44, 131 N.W.2d 45 (1964).
 
 
 43
 The District Court also felt the decree was deficient in not specifying "the number of payments or periods for which such order applies." Since this was a life insurance policy to be paid in a lump sum on decedent's death and not payments from a pension plan, there was no need to specify the number of payments or periods for which the order applies.
 
 
 44
 While the divorce decree did not specify where deceased was employed, the decree identified the policy as one through Metropolitan Life Insurance Company maintained at his place of employment. This permitted identification of the plan and is not ambiguous. Confronted with the same problem, the Wheaton Court reached the same conclusion. The decree contains the addresses of the children since it provides the address of their mother in whose custody they were placed.
 
 
 45
 We believe the divorce decree here was specific enough to substantially comply with ERISA's requirements. No essential information is lacking. As the divorce decree was written before the REA amended ERISA in 1984, we should not demand literal compliance where Congress' intent has been to give effect to domestic relations orders where it is clear what the decree intended.
 
 
 46
 Accordingly, the judgment of the District Court is REVERSED.
 
 
 
 [1]
 Specifically, Rule 22(1) provides:
 Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.
 FED.R.CIV.P. 22(1).
 
 
 [2]
 Section 1331 of Title 28 confers jurisdiction on the federal courts of "all civil actions arising under the Constitution, laws, or treaties of the United States."
 
 
 [3]
 Although neither party has raised this issue, we also note that appellants' premature notice of appeal does not affect the exercise of our jurisdiction. On January 18, 1996, the District Court entered an order granting appellee's motion for summary judgment and denying appellants' motion for summary judgment. Appellants filed a notice of appeal on January 20, 1996, but it was not until February 1, 1996 that the District Court entered its judgment declaring that appellee was entitled to the net proceeds of life insurance on James' life
 Under 28 U.S.C. § 1291, a circuit court of appeals has jurisdiction over an appeal from a final order of the district court. As long as a subsequent final order is eventually entered, a prematurely filed notice of appeal can confer appellate jurisdiction. FED. R.APP. P. 4; Gillis v. United States Dep't of Health and Human Servs., 759 F.2d 565, 569 (6th Cir.1985). Therefore, our exercise of jurisdiction is proper.
 
 
 [4]
 The parties do not dispute that the life insurance plan involved in this case is a "welfare plan" governed by ERISA. ERISA defines an "employee welfare benefit plan" or "welfare plan" to mean, inter alia,
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of ... death.
 29 U.S.C. § 1002(1). In comparison, pension benefit plans provide retirement income. See id. § 1002(2).
 
 
 [5]
 Section 1051 states in pertinent part:
 This part shall apply to any employee benefit plan described in section 1003(a) of this title (and not exempted under section 1003(b) of this title) other than--
 (1) an employee welfare benefit plan;....
 29 U.S.C. § 1051(1).