Dorothy D. Hubbard, defendant, appeals the trial court's grant of summary judgment in favor of Permilia Sue Clarkson, plaintiff, on Permilia's claim to her father's life insurance benefits. Having found no error in the trial court's judgment, we affirm the decision of the trial court.
 I.
This action has its basis in the divorce of Julia and James Hubbard, the parents of Permilia. Julia and James Hubbard were divorced in August of 1973. The parties' final decree of divorce incorporated their negotiated separation agreement. The incorporated separation agreement provided, in pertinent part, that:
 "10. Husband agrees to forthwith designate his daughter, Permilia Sue Clarkson, irrevocable beneficiary as to One-Half of all insurance benefits arising out of Husband's program with and through his employer, General Motors Corporation, and to furnish proof of said designation of beneficiary within a reasonable time after execution of the within agreement."
At the time of the parties' divorce, James was insured through his employer under two group-life policies issued by Met Life. The insurance policies were part of GM's ERISA welfare benefit plan. The first policy, which was referred to as "basic" life insurance, was provided to all GM salaried employees on a non-contributory basis in an amount equal to two times the employee's annual salary. The second group policy, which was referred to as "optional" life insurance, was made available to salaried employees at a hundred percent contributory payroll deduction.
At the time of the parties' divorce, James' optional coverage equaled three times his annual base salary. Following the divorce, James elected to increase his optional coverage from three to five times his annual base salary. After James reached the age of sixty-five, both policies began decreasing in value through standard plan benefit reductions.
James designated Julia, his first wife, as the beneficiary of both policies before the parties' divorce in 1971. Shortly after their divorce, James changed the beneficiary on both of his policies to his second wife, Dorothy. Two months later, James executed beneficiary designations naming Dorothy and Permilia each as one-half beneficiaries on both the basic and optional policies. In compliance with the divorce decree, James provided Julia with beneficiary designations demonstrating that he had made Permilia a one-half beneficiary of both of his insurance policies. Then, in October of 1974, without informing Julia or Permilia, James removed Permilia as the beneficiary on his optional policy, leaving Dorothy as the sole beneficiary of the optional policy.
James died on February 2, 1992, leaving Dorothy as his surviving spouse, and Permilia as his surviving child. Following James' death, Permilia filed a complaint against Dorothy, General Motors Corporation, and Met Life in the Common Pleas Court of Montgomery County. General Motors Company and Met Life removed the case to the federal district court. Once in the federal court, the court dismissed General Motors Company and Met Life as defendants, and granted summary judgment in favor Permilia. Dorothy appealed the district court's decision to the Sixth Circuit Court of appeals. The Sixth Circuit vacated the trial court's judgment and remanded the case to the Montgomery County Common Pleas Court on the basis of lack of subject matter jurisdiction. The court determined that Permilia's complaint did not raise a federal issue and that a defense, that is, Dorothy's defense of federal preemption, could not alone give rise to federal question jurisdiction.
Upon remand to the Montgomery County Court of Common Pleas, the court granted summary judgment in favor of Permilia. The trial court determined that ERISA did not preempt James' assignment of one-half of the right to his insurance benefits to Permilia in the parties' divorce decree. The court further determined that James clearly had assigned Permilia the right to one-half of his benefits in both his basic and optional insurance policies in the parties' divorce decree. Dorothy now brings this timely appeal of the trial court's grant of summary judgment in favor of Permilia.
 II.
In his sole assignment of error, Dorothy's counsel argues that:
 THE DECISION ENTERED HEREIN BY THE COMMON PLEAS COURT OF MONTGOMERY COUNTY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT ENTERED THERE UPON [sic] ARE CONTRARY TO LAW.
At the outset, Dorothy's counsel argues that the Employee Retirement Income Security Act ("ERISA") preempts the parties' divorce decree as to whether Permilia is a beneficiary of James' optional insurance governed by an ERISA welfare benefits plan. ERISA's provision regarding its preemptive scope is set forth under U.S.C.A. § 1144, which provides, in relevant part, that:
 "Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C.S § 1003(a)] and not exempt under section 4(b) [29 U.S.C.S § 1003(b)]. * * *"
Dorothy's attorney argues that the designation of beneficiaries in this case is preempted by ERISA because the Sixth Circuit Court of Appeals in Metropolitan Life Ins. v. Pressley
(6th Cir. 1996), 82 F.3d 126, determined that the designation of beneficiaries on ERISA insurance policies "relates to" an ERISA welfare benefit plan. As set forth in the above-quoted portion of ERISA, state law that "relates to" an employee benefit plan is preempted by ERISA. The court found that the designation of beneficiaries "relates to" ERISA employee benefit plans because ERISA has a provision on how plan benefits are to be distributed. More specifically, ERISA provides that benefits are to be distributed according to the documents of the benefit plan. In view of this, the court determined that the designation of a beneficiary relates to the benefits plan, and that State law which attempts to alter the designation of a beneficiary on an ERISA welfare benefit plan is preempted by ERISA. The court further held that questions as to the identity of the beneficiary are to be determined under ERISA solely by reference to the plan documents.
Applying the court's holding in Pressley to the present case, Dorothy's counsel argues that the designation of Permilia as a beneficiary under State law, that is, the divorce decree, is preempted by ERISA. He further argues that under ERISA the proper beneficiary is Dorothy because Dorothy is designated as the sole beneficiary on the plan documents. Based upon this reasoning, Dorothy's counsel argues that the trial court erred in finding that the beneficiary designation in the divorce decree was not preempted by ERISA and that Permilia is entitled to half of the welfare plan benefits. We find this argument to be unpersuasive. Although U.S.C.A. § 1144 provides that State law that "relates to" an employee benefit plan is preempted by ERISA, it further provides that there are exceptions to this broad preemption language. One of those exceptions is for Qualified Domestic Relations Orders ("QDRO's"). What is more, sincePressley, the Sixth Circuit expressly has decided in MetropolitanLife Insurance Co. v. Marsh (6th Cir. 1997), 119 F.3d 415, that Qualified Domestic Relations Orders which assign the right to insurance benefits to an individual constitute an exception to ERISA preemption. The Marsh court further determined that when dealing with divorce decrees written prior to the 1984 amendment of ERISA, courts should not demand literal compliance with ERISA's requirements for Qualified Domestic Relations Orders where it is clear that the court intended that the right to the insurance benefits be assigned.
Turning to the present case, we find that the divorce decree in the present case sufficiently satisfied the requirements of a QDRO. Initially, we find that literal compliance with the requirements of a QDRO is unnecessary in this case because the divorce decree in question was entered into approximately eleven years before ERISA was amended and because the intention of the court that the right be assigned was clear in the divorce decree.
A QDRO is defined under in U.S.C.A. § 1056(d)(3) as:
 (B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement) which —
 (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and
 (II) is made pursuant to State domestic relations law (including a community property law).
Dorothy's counsel argues that the divorce decree in this case does not qualify as a QDRO under the above definition. Her counsel argues that to qualify as a QDRO under ERISA's definition, Permilia must have been a child at the time of the divorce or otherwise dependent upon James. Dorothy's counsel asserts that Permilia could not qualify as either of those because she was twenty-three years old at the time of the divorce and because she was married, and, hence, could not be said to be dependent upon James.
We are unpersuaded by her counsel's arguments, and find that the divorce decree in this case was sufficient to satisfy ERISA's definition of a QDRO. As part of the parties' property division, James agreed in the incorporated separation agreement to name Permilia, his daughter, as a one-half beneficiary of his insurance policies through his employer. We find that it is of little consequence that Permilia was twenty-three years old at the time of their divorce. Although Permilia was not a minor at the time of the divorce, she was, is, and will always be his "child."
Furthermore, we do not find that the reference to "other dependents" indicates that the spouse, former spouse, or child necessarily have to be dependents at the time of the divorce in order for a divorce decree to qualify as a domestic relations order. We find that the phrase "other dependents" merely serves as a catchall category that restricts the individuals under a QDRO to the same quality of relationship as a spouse, former spouse, or child. We do not find that it restricts a spouse, former spouse, or child to only dependents. Certainly, a property division to a financially independent spouse may be effectuated through a QDRO. Thus, in our view, a QDRO is essentially just a method in which marital property is allocated to family members or "dependents," that is, other individuals who receive the same status as a spouse, former spouse, or child because of their relationship with the individual. Weller v. Weller (1996), 115 Ohio App.3d 173.
Dorothy's counsel also argues that the divorce decree in this case was insufficient to qualify as a QDRO because it did not satisfy the requirements of a QDRO. The requirements of a QDRO are set forth as follows in U.S.C.A. § 1056:
 (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies —
 (I) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
 (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
 (iii) the number of payments or period to which such order applies, and
(iv) each plan to which such order applies.
We also find that the divorce decree was sufficient to satisfy the requirements of domestic relations orders under ERISA. As to the name of the beneficiary, the divorce decree clearly names Permilia as a half beneficiary to James' insurance policies. Furthermore, James, following the mandate of the divorce decree, at one time named Permilia as a half beneficiary to the policy in question, but later removed her name from the policy. Additionally, because Permilia was named a one-half beneficiary of the basic insurance policy and at one time named a one-half beneficiary of the optional insurance policy, Permilia's address was in the plan file.
As to the amount or percentage of James benefits that are to be paid to Permilia, the divorce decree clearly dictates that Permilia is to receive half of James' benefits. Furthermore, the divorce decree describes the period to which the court's order applies by providing that within a reasonable amount of time after the entry of the divorce decree, James was to make Permilia the irrevocable beneficiary of one-half of all of James' insurance benefits arising out of his insurance program with and through his employer. Finally, the divorce decree adequately describes each plan to which the order applies by providing that James was to make Permilia the beneficiary of all of his insurance benefits arising out of his insurance program with and through his employer.
Based upon the foregoing, we overrule this assignment of error and affirm the judgment of the trial court.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Edward M. Smith
James F. Martin
Hon. David A. Gowdown