**Billie Jo LETOURNEAU, Personal Representative of the Estate of William D. LeTourneau, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION and Marcia Ann Michaels, Defendants–Appellees.**

No. 00–1695.

United States Court of Appeals, Sixth Circuit.

Nov. 9, 2001.

Before DAUGHTREY, GILMAN, and GIBSON,\* Circuit Judges.

PER CURIAM.

The plaintiff, Billie Jo LeTourneau, acting as the personal representative of the estate of her father, William D. LeTourneau, makes a two-pronged attack upon a grant of summary judgment to General Motors Corporation that effectively directed that the proceeds in the deceased's personal savings plan account at GMC be paid to William's ex-wife rather than to his estate. Specifically, the plaintiff insists that the case was improperly removed to federal court and that GMC acted arbitrarily and capriciously in making its benefits determination. Because we conclude that the plaintiff's claim for her father's pension benefits was preempted by the Employee Retirement Security Act (ERISA), 29 U.S.C. §§ 1001–1461, and that GMC was obligated by plan documents to disburse the savings plan proceeds as it did, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Immediately prior to his death on August 25, 1997, William LeTourneau was an employee of GMC and was a participant in the company's ERISA-governed personal savings plan. On June 3, 1992, while still married to his second wife, Marcia A. LeTourneau (now Marcia A. Michaels), William executed a beneficiary designation form on which he named Marcia as the sole beneficiary of his interest in the proceeds of the plan. Even though William

---

\* The Hon. John R. Gibson, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

and Marcia were divorced by court decree on April 4, 1994, William neither removed Marcia's name from the beneficiary form nor added another name to share in the eventual distribution.

In the decree dissolving their marriage, William and Marcia agreed that a Qualified Domestic Relations Order (QDRO) should be submitted to GMC and should provide that Marcia "will be awarded $14,000 of the total amount in the Income Funds of the Defendant's Personal Savings Plan Account as of the date of this Judgment of Divorce." The mandated QDRO was, in fact, presented to GMC, which, in accordance with the terms of the order, forwarded $14,000 from LeTourneau's account to Marcia.

When William LeTourneau died, his personal savings plan account at GMC contained an additional $20,610.90. In seeking to disburse those monies, the corporation first referenced the designation-of-beneficiary form on file with GMC. Because that document unequivocally listed Marcia LeTourneau (Michaels) as the intended beneficiary, the $20,610.90 payment was made to that individual.

The plaintiff, after hearing that her father's ex-wife rather than her father's estate benefitted from the GMC distribution, filed suit in Michigan state court against GMC and Michaels, alleging breach of contract, unjust enrichment, fraud, and negligence. In the complaint, as the estate's personal representative, she sought monetary damages, establishment of a constructive trust, and other appropriate relief. GMC removed the action to federal court, however, arguing that the claims raised by Billie Jo LeTourneau involved distributions from an ERISA-covered plan and

thus were preempted by the provisions of the federal legislation. Following GMC's motion for summary judgment, the district court conducted a hearing on the matter and concluded that "the funds were properly distributed to Mrs. Michaels as the named beneficiary and that a reasonable jury could not find that the plan administrator here acted arbitrarily or capriciously" in making the distribution. Summary judgment was, therefore, entered on GMC's behalf.

## DISCUSSION

### I. Removal of Action to Federal Court

■ As a preliminary issue, the plaintiff alleges that this case should not have been removed to federal district court because the dispute involves the interpretation of a QDRO, a matter that is peculiarly a subject of state law and one that is not preempted by the broad sweep of ERISA legislation.[1] In fact, however, the fate of the proceeds of William LeTourneau's personal savings plan account was not dependent upon the 1994 QDRO that provided for a $14,000 distribution from that account to William's ex-wife. Rather, that state court document merely disposed of a portion of William's property as part of the divorce settlement. The remainder of the proceeds of the plan were left for later distribution according to ERISA principles.

Moreover, pursuant to the relevant provisions of 29 U.S.C. § 1132(e)(1), state and federal courts have *concurrent* jurisdiction over civil actions brought by plan participants or beneficiaries to recover benefits or enforce rights under the plan. *See also* 29 U.S.C. § 1132(a)(1)(B). In such situa-

---

1. Pursuant to 29 U.S.C. § 1144(a), except as otherwise provided in the legislation, the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereaf-

ter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

tions, a defendant may seek removal of the matter to federal court, provided that the substance of the litigation does not encompass the limited exclusions from removal listed in 28 U.S.C. § 1445. *See* 28 U.S.C. § 1441(a). Because the plaintiff's action does not fall into one of the excluded categories, GMC was thus entitled to invoke the jurisdiction of the federal district court.

## II. Grant of Summary Judgment to GMC

The plaintiff also challenges the basis for the district court's grant of summary judgment upholding GMC's benefit determination. In evaluating such a grant, we employ *de novo* review and use the same legal standard underlying the district court's analysis. *See Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). Consequently, a district court decision will be found proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the propriety of the district court's summary judgment determination, however, we must construe the evidence and all inferences to be drawn from it in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

In order to protect employee pension plans from the reaches of creditors and other individuals, the drafters of ERISA explicitly mandated that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). By 1984, however, Congress became concerned that women were not receiving fair treatment in divorce settlements where money accumulating in their spouses' pension plans remained beyond the reach of state domestic relations orders providing for property settlements. *See Metro. Life Ins. Co. v. Marsh,* 119 F.3d 415, 419 (6th Cir.1997). Consequently, Congress enacted the Retirement Equity Act (REA) of 1984, Pub.L. No. 98–397, 98 Stat. 1426, to ensure that ERISA's prohibition on alienation and assignment of pension benefits would not apply if the state court divorce settlement "is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). To the extent, therefore, that a state court issues a QDRO that allows a violation of the anti-alienation provisions of an ERISA pension plan, ERISA's preemption provisions are inapplicable and effect must be accorded the domestic relations order.

■ This appeal, however, does not involve a dispute as to the efficacy of the QDRO entered in the divorce proceedings between William LeTourneau and Marcia Michaels. Rather, the issue contested by the parties now revolves solely around the proper designation of beneficiaries, a determination that "has a connection with or reference to an ERISA plan, thereby preempting state law." *Marsh,* 119 F.3d at 420. *See also Metro. Life Ins. Co. v. Pressley,* 82 F.3d 126, 129 (6th Cir.1996).

■ Section 8.02(a) of the GMC personal savings plan states generally that "[a] Participant may file with the party designated by the Administrator a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant." The section further provides that, upon the death of a *married* employee, "the entire balance

of the Account shall be paid to the surviving spouse" unless that spouse consents in writing to an alternate distribution. At the time of his death, however, William LeTourneau was not married; thus, this subsection of § 8.02(a) of the plan has no relevance to this case.

Subsection (b) of § 8.02 makes further provisions in cases in which the participant is unmarried at the time of death *and* the participant "does not file a written designation of beneficiaries."[2] It is this section, and § 8.02(c),[3] upon which the plaintiff relies in arguing that she is entitled to the proceeds of her father's pension fund. In doing so, the plaintiff either conveniently ignores subsection (b)'s precondition that the participant *not* have a designated beneficiary on file with the appropriate GMC office or else assumes that the inclusion of a payment from the plan to Marcia Michaels in the 1994 QDRO somehow disqualifies that individual from taking additional benefits in 1997 according to the expressed, unrevoked wishes of the plan participant.

First, however, a claimant may not demand access to plan funds simply by ignoring the express requirements for distribution outlined in the plan. Second, the receipt by Marcia Michaels in 1994 of $14,000 from William. LeTourneau's personal savings plan did not thereby disqualify Michaels from further distributions from the fund. In fact, by the time of LeTourneau's death in 1997, the QDRO entered in the state court divorce had no further implications for the pension distribution and the plan administrator was duty-bound then to comply with the explicit provisions of the plan itself.

Because William LeTourneau was unmarried at the time of his death, and because he had also listed a designated beneficiary on the proper form with the proper pension plan official, the plan's generally-applicable rule of distributing money to named beneficiaries should be given effect. Had LeTourneau not wished the remainder of his pension fund earnings to be distributed to Michaels, he could have easily changed the designation of beneficiary form in the three-year period between his divorce and his death. Furthermore, despite the completion of the QDRO-mandated redistribution of assets by LeTourneau and Michaels in 1994, nothing in the divorce decree itself prohibited the 1997 distribution from the account to Michaels. The decree did award to William LeTourneau and to Michaels individually "the interest that either may have in any and to all of the following: (1) any pension, annuity, or retirement benefits; (2) any accumulated contributions in any pension, annuity, or retirement system; or (3) any right or contingent right in and to unvested pension, annuity, or retirement benefits." Tellingly, however, the decree did nothing to restrict either party's right to make later distributions from such accounts to the former spouse.

Upon William LeTourneau's death, the GMC plan administrator was required to

---

2. Section 8.02(b) of the plan provides:
   In the event an unmarried Participant does not file a written designation of beneficiaries, such a Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees . . . .

3. In relevant part, § 8.02(c) provides that "[i]f the Corporation shall be in doubt as to the right of any beneficiary to receive any such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone."

distribute the funds remaining in the employee's personal savings plan account. Because LeTourneau was, at that the time of his death, unmarried and because he had on file with the company a completed designation of beneficiary form, the administrator complied with regular plan procedures and distributed the money in accordance with the employee's apparent, stated preference. Under the circumstances presented in this appeal, the decision of the administrator to do so cannot be considered arbitrary or capricious. The district court thus properly granted summary judgment to GMC in this matter.

For the reasons set out above, we AFFIRM the judgment of the district court.