Horace B. SMITH, Administrator
of the Estate of Vickie L.
Rice, Appellant,

v.

Anthony R. RICE;  and Plumbers
Local Union No. 107 Pension
Trust Fund, Appellees.

No. 2003–CA–001285–MR.

Court of Appeals of Kentucky.

July 9, 2004.

Ronald Marstin, Legal Aid Society, Inc., Louisville, KY, for appellant.

Linda J. Wallbaum, Kevin R. Winstead, Sales, Tillman, Wallbaum, Catlett & Satterley PLLC, Louisville, KY, for appellee Plumbers Local Union No. 107 Pension Trust Fund.

Before BUCKINGHAM and VANMETER, Judges; and EMBERTON, Senior Judge.[1]

*OPINION*

VANMETER, Judge.

This is an appeal from an order entered by the Jefferson Circuit Court. The court held that its earlier dissolution decree was not a qualified domestic relations order (QDRO), and it denied the motions of appellant to join the Plumber's Local Union No. 107 Pension Trust Fund (Fund) as a third-party defendant and to substitute Horace and Lorene Smith as appellants. For the reasons stated hereafter, we affirm.

Vickie Smith and Anthony Rice married on July 20, 1984, and they separated in January 1999. The marriage was dissolved by the trial court's January 19, 2000, findings of fact and decree of dissolution of marriage. Notably, in its January 19 decree, the trial court found that Vickie "believes that [Anthony] has a pension plan through the Plumbers and Gasfitters Union No. 107, 1235 Bardstown Road, Louisville, Kentucky 40204, wholly accumulated during the marriage," and it ordered as follows regarding Anthony's pension plan:

> [Vickie] is awarded 50 percent of any pension plan balance held by [Anthony] to the extent that it accumulated during the marriage; counsel for [Vickie] shall tender a Qualified Domestic Relations Order for the purpose of dividing that asset; and [Anthony] shall sign any release needed to access information about the pension plan balance.

Accordingly, Vickie's counsel drafted a QDRO and forwarded it to the Fund's counsel for approval on April 25, 2000. The Fund's counsel responded, stating that there was "nothing for the [Fund] to consider in [the] matter since" Vickie had died on March 13, 2000.

Vickie's estate subsequently filed a motion seeking to join the Fund as a third-party defendant and to require the Fund to transfer 50% of Anthony's pension to Vickie's estate, pursuant to the court's January 19 decree. On January 3, 2003, the court held that its January 19 decree was not a QDRO. On January 9, Vickie's estate moved the court to clarify its holding regarding the QDRO and to substitute Vickie's parents, Horace and Lorene Smith, as petitioners. The court responded on May 6, 2003, reiterating that its January 19 decree was not a QDRO. The court further denied the motions of Vickie's estate to join the Fund as a third-party defendant and to substitute Horace and Lorene Smith as petitioners. This appeal followed.

Although the record does not contain a copy of Anthony's pension plan, the Fund's appellate brief asserts that the plan is a noncontributory, defined benefit plan and that members do not have separate account balances in the pension fund. However, Kentucky courts do not distinguish between contributory pensions (where employees contribute to the pension fund) and noncontributory pensions (where only employers contribute to the pension fund) for purposes of dividing pensions in divorce proceedings. *Foster v. Foster*, Ky.App., 589 S.W.2d 223, 224 (1979). Moreover, Kentucky courts are willing to divide both vested and nonvested pensions.[2] *See Poe v. Poe*, Ky.App., 711

**1.** Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

**2.** A pension has vested when "the owning party has 'a current right to the proceeds of the plan.'" *Owens v. Owens*, Ky.App., 672 S.W.2d 67, 69 (1984) (citing *Savings and Prof-*

S.W.2d 849, 856 (1986); *Foster v. Foster,* Ky.App., 589 S.W.2d 223, 224 (1979). Therefore, it was not improper for the trial court to divide Anthony's pension as marital property in this divorce proceeding.

■ The parties do not dispute that Anthony's pension is governed by the Employee Retirement Income Security Act (ERISA), which limits the divisibility of pensions. In order to qualify as an ERISA pension plan, a pension plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Accordingly, "alienation or assignment of benefits is generally prohibited under [an ERISA] pension plan." *Hogle v. Hogle,* 732 N.E.2d 1278, 1279 (Ind.Ct.App.2000). However, "the Retirement Equity Act (REA) amendments to ERISA in 1984 created a limited exception for a state domestic relations order [which] is a 'qualified domestic relations order.'" *Id.* at 1279 (citing *Von Haden v. Supervised Estate of Von Haden,* 699 N.E.2d 301, 304 (Ind.Ct.App. 1998)).

A QDRO is a "judgment, decree, or order" "made pursuant to a State domestic relations law" that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant[.]" 29 U.S.C. § 1056(d)(3)(B)(ii)(I). Such an order "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan[.]" § 1056(d)(3)(B)(i)(I). Further, a QDRO must clearly specify as follows:

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

§ 1056(d)(3)(C). Finally, an order qualifies as a QDRO only if it:

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

§ 1056(d)(3)(D).

■ Appellant argues that the trial court erred in holding that its January 19 decree did not qualify as a QDRO. We disagree.

■ Whether the January 19 decree "constitutes a valid QDRO under ERISA is a question of law for this court to determine de novo." *Branco v. UFCW–Northern California Employers Joint Pension Plan,* 279 F.3d 1154, 1158 (9th Cir.2002) (internal citation omitted). As appellant notes, the Sixth Circuit has previously held that in order to qualify as a QDRO, a divorce decree must be "specific enough to substantially comply with ERISA's requirements." *Metropolitan Life Insur-*

*it Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038, 1045 (7th Cir.1983)).

ance Co. v. Marsh, 119 F.3d 415, 422 (6th Cir.1997).[3] Indeed, "[t]o require more specificity would defeat the purpose of the provision creating an exception to inalienability for qualified domestic relations orders." Marsh, 119 F.3d at 422 (citing Metropolitan Life Insurance Co. v. Wheaton, 42 F.3d 1080, 1085 (7th Cir.1994)). Accordingly, the issue before us is whether the January 19 decree substantially complies with ERISA's QDRO requirements.[4]

■ Although the January 19 decree does not contain Vickie's or Anthony's last known mailing addresses, the legislative history of the REA amendments to ERISA instructs that such omissions are not always fatal:

> The committee intends that an order will not be treated as failing to be a qualified order merely because the order does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the order. S.Rep. No. 575, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 2547, 2566.

Stinner v. Stinner, 520 Pa. 374, 554 A.2d 45, 48–49 (1989). Moreover, some "[c]ourts have recognized that an attorney's address satisfies this requirement." In re Williams, 50 F.Supp.2d 951, 959 (C.D.Cal.1999). The January 19 decree clearly satisfies ERISA's address requirement, not only because the plan administrator had reason to know of Vickie's and Anthony's last known mailing addresses, but also because the addresses of both parties' attorneys were listed in the decree.

Next, the January 19 decree satisfies the percentage and specificity requirements of 29 U.S.C. § 1056(d)(3)(C)(ii) and (iv), because the order grants Vickie 50% "of any pension plan balance held by the Respondent to the extent that it accumulated during the marriage." Further, the order refers to the pension plan as being "through the Plumbers and Gasfitters Union No. 107, 1235 Bardstown Road, Louisville, Kentucky 40204."

Nevertheless, the January 19 decree does not qualify as a QDRO, because it insufficiently specifies "the number of payments or period to which such order applies," as required by 29 U.S.C. § 1056(d)(3)(C)(iii). Although the order at issue in Marsh did not specify the number of payments or the period to which the order applied, the order qualified as a QDRO because it pertained to "a life insurance policy to be paid in a lump sum on decedent's death and not payments from a pension plan, [with the result that] there was no need to specify the number of payments or periods for which the order applies." Marsh, 119 F.3d at 422. Here, by contrast, the omission is fatal, because, unlike the Marsh order, the January 19 decree pertains to a pension plan. A fund attempting to implement the January 19 decree would not be able to do so, because although the decree awards Vickie 50% of

---

**3.** Although, as the trial court noted, Marsh dealt with a welfare plan rather than a pension plan, Marsh is nevertheless beneficial in determining whether a court order qualifies as a QDRO, because "the definition of qualified domestic relations orders is not limited to orders that affect pension plans. It applies to all plan participants." Metropolitan Life Insurance Co. v. Wheaton, 42 F.3d 1080, 1083 (7th Cir.1994).

**4.** The fact that neither the trial court nor the parties intended for the January 19 decree to be a QDRO at the time it was entered is irrelevant to our analysis. Intent is not controlling; whether the order substantially complies with ERISA's QDRO requirements is controlling.

the marital pension, it does not instruct when or for how long the pension should be distributed. This omission is significant because of the inherent differences between vested and nonvested pensions. *See, e.g., Poe,* 711 S.W.2d at 856 ("a non-vested pension is not overly speculative [and may be divided] where courts . . . are willing to delay the actual division of those benefits until they are capable of distribution and have in every sense of the word 'vested' "); *Owens,* 672 S.W.2d at 69 ("trial court abused its discretion by not delaying division until a more suitable time in light of the severe economic consequences [plan participant] would suffer if the division was currently effective").

■ Moreover, because Vickie's estate failed to revive the pending QDRO proceedings, the January 19 decree may not now be modified. Pursuant to CR 25.01, "[i]f a party dies during the pendency of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties. If substitution is not so made the action may be dismissed as to the deceased party." Further, KRS 395.278 mandates that an "application to revive an action in the name of the representative or successor of a plaintiff . . . shall be made within one (1) year after the death of a deceased party."

■ It is true, as appellant asserts, that had the January 19 decree qualified as a QDRO, it would be unnecessary to revive the action in order to enforce that decree, because "[u]nlike a pending action, a judgment survives the death of a judgment creditor." *Whittaker v. Smith,* Ky., 998 S.W.2d 476, 478 (1999). However, given our conclusion that the January 19 decree does not qualify as a QDRO, timely revival of the proceedings clearly was necessary. *Duvall v. Duvall,* Ky., 550 S.W.2d 506, 507 (1977). Because Vickie's estate did not move the court to substitute Horace and Lorene Smith as appellants until nearly three years after Vickie's death, there clearly was not compliance with the one-year revival limitations period, and the January 19 decree may not now be modified.

Because we hold that the trial court's January 19 decree does not qualify as a QDRO and that it may not be modified because the pending proceedings were not timely revived, the issues of whether to join the union as a third-party defendant and whether to substitute Horace and Lorene Smith as appellants are rendered moot.

The court's judgment is affirmed.

ALL CONCUR.