**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Susan CRONENWETT, et al., Defendants.**

**Susan Cronenwett, Third–Party Plaintiff,**

v.

**Fidelity Institutional Retirement Services Company, et al., Third–Party Defendants.**

No. C–3–96–84.

United States District Court, S.D. Ohio, Western Division.

March 30, 2001.

890

Thomas Allen Knoth, Thompson Hine, Dayton, OH, for plaintiff.

Lawrence Joseph Greger, Sharon Lynn Ovington, Greger and Ovington, Dayton, OH, Marlena Lynn Pankowski, Centerville, OH, for Susan K. Cronenwett, defendant.at1

Jack Frederick Fuchs, Thompson Hine & Flory LLP, Cincinnati, OH, for Fidelity Institutional Retirement Services Co., defendant.at1

Charles Wharton Slicer, Jr., Flanagan Lieberman Hofman & Swaim, Dayton, OH, for Lisa R. Gross, defendant.

David M. Davis, Hardy, Lewis & Page, P.C., Birmingham, MI, for General Motors Corp., defendant.

DECISION AND ENTRY FINDING DEFENDANT/THIRD–PARTY PLAINTIFF SUSAN CRONENWETT TO BE PROPER BENEFICIARY OF LIFE INSURANCE POLICY ISSUED BY PLAINTIFF METROPOLITAN LIFE INSURANCE COMPANY; THIRD–PARTY COMPLAINT FILED BY DEFENDANT/THIRD–PARTY PLAINTIFF SUSAN CRONENWETT DISMISSED AS BEING UNAUTHORIZED BY RULE 14 OF FEDERAL RULES OF CIVIL PROCEDURE, WITHOUT PREJUDICE TO REFILING AS SEPARATE ACTION; CROSS–CLAIMS FILED BY DEFENDANT/THIRD–PARTY PLAINTIFF SUSAN CRONENWETT DISMISSED AS UNAUTHORIZED BY RULE 13 OF FEDERAL RULES OF CIVIL PROCEDURE, WITHOUT PREJUDICE TO REFILING AS SEPARATE ACTION; MOTION FOR SUMMARY JUDGMENT (DOC. # 37) AND MOTION TO DISMISS (DOC. # 44) FILED BY THIRD–PARTY DEFENDANT FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY OVERRULED, AS MOOT; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT/THIRD–PARTY PLAINTIFF SUSAN CRONENWETT AND AGAINST DEFENDANT LISA GROSS ON ISSUE OF ENTITLEMENT TO INSURANCE PROCEEDS; JUDGMENT TO BE ENTERED AGAINST DEFENDANT/THIRD–PARTY PLAINTIFF SUSAN CRONENWETT ON HER THIRD–PARTY COMPLAINT AND CROSS–CLAIMS; TERMINATION ENTRY

RICE, Chief Judge.

This litigation stems from a dispute over the proper beneficiary of a life insurance

policy issued to decedent Lucian Johnson by Plaintiff Metropolitan Life Insurance Company ("Met Life"). A 1990 Ohio divorce decree and separation agreement obligated Johnson to name his ex-wife, Defendant/third-party Plaintiff Susan Cronenwett, as the irrevocable beneficiary. In 1994, however, Johnson designated Defendant Lisa Gross as the beneficiary of the policy. He then died in 1995, and both women filed claims for the insurance proceeds. As a result, Met Life commenced this interpleader action, seeking a declaratory judgment regarding the proper beneficiary of the policy. Cronenwett and Gross subsequently agreed to submit the foregoing issue to the Court for a decision on the merits, and on October 7, 1997, the Court ordered them to file joint stipulations of fact and simultaneous briefs. (See Doc. # 22, Entry Setting Procedures for Submission of Lawsuit on Stipulations and Briefing). Those joint stipulations and briefs have been filed (Doc. # 34–36), and the issue raised by Met Life is now before the Court for a decision on the merits.

The Court notes, however, that several other issues have arisen since it filed its October 7, 1997, Entry, setting procedures for resolution of the insurance beneficiary dispute. In particular, on August 13, 1997, Cronenwett asserted a cross-claim against Gross, essentially seeking a declaratory judgment that she (Cronenwett) is the proper beneficiary under Lucian Johnson's life insurance policy. (Doc. # 15 at 3–4). Thereafter, on July 14, 1998, Cronenwett filed a purported cross-claim against third-party Defendant Fidelity Institutional Retirement Services Company ("Fidelity"), which was not then a party to this litigation, for breach of fiduciary duty under ERISA. (Doc. # 25). In support of this

ERISA "cross-claim," Cronenwett alleged that Fidelity improperly had paid Gross the funds in a "personal savings plan" that Lucian Johnson had maintained through his employment with General Motors.[1] (Id. at 1–5). On July 14, 1998, Cronenwett also filed two purported counter-claims against Gross. (Id. at 5–6). First, Cronenwett asserted a counter-claim for unjust enrichment, based on Gross' receipt of the funds in Lucian Johnson's personal savings plan. Second, she set forth a counter-claim for conversion, based on Gross' receipt of those same funds. (Id.).

In response to Cronenwett's "cross-claim" against it, Fidelity filed a cross-claim against Gross on January 11, 2000, alleging that, if Fidelity is found liable to Cronenwett for breach of fiduciary duty, then Gross would be unjustly enriched by retaining the personal savings plan funds. (Doc. # 31 at 5). Fidelity then moved for summary judgment on (1) the purported "cross-claim" asserted against it by Cronenwett and (2) its own cross-claim against Gross. (Doc. # 37). Thereafter, on December 1, 2000, Cronenwett moved to file an amended "cross-claim/third-party Complaint" in order to add General Motors Corporation (which is allegedly the Plan Administrator of a General Motors Personal Savings Plan) and General Motors Investment Management Corporation as third-party Defendants. (Doc. # 42). The Court sustained Cronenwett's Motion by notation Entry on December 5, 2000. (Id.). That same day, Cronenwett filed an "amended cross-claim/third-party Complaint," asserting her ERISA breach of fiduciary duty claim against Fidelity, General Motors Corporation and General Motors Investment Management Corporation. (Doc. # 43). In response, Fidelity filed a Motion to Dismiss Cronenwett's amended

1. The "personal savings plan" is different than the Met Life insurance policy that Lu- cian Johnson maintained through his employment with General Motors.

cross-claim/third-party Complaint for failure to state a claim upon which relief may be granted. (Doc. # 44).

As a means of analysis, the Court first will render a decision on the merits with respect to the proper beneficiary under Lucian Johnson's Met Life insurance policy. The Court then will review the various cross-claims, counter-claims and third-party claims that have been filed, as well as the Motion for Summary Judgment (Doc. # 37) and Motion to Dismiss (Doc. # 44) filed by Fidelity.

I. *Met Life's Interpleader Action to Determine Proper Life Insurance Beneficiary*

As noted above, the first issue before the Court is whether the proceeds of Lucian Johnson's Met Life policy are payable to Cronenwett or to Gross. Before addressing the merits of this issue, the Court will set forth the stipulated facts upon which Cronenwett and Gross have asked the Court to base its decision.

A. *Joint Stipulations of Fact Filed by Cronenwett and Gross (Doc. # 34)*

On April 20, 2000, Cronenwett and Gross filed the following Stipulations of Fact (Doc. # 34) concerning the proper beneficiary of Lucian Johnson's Met Life insurance policy:

1. Susan K. Cronenwett is the same person as Susan K. Johnson, formerly the spouse of Lucian G. Johnson.

2. On or about November 2, 1990[,] Susan K. Cronenwett f/k/a Susan K. Johnson was legally divorced from Lucian Johnson, said decree being filed in the Common Pleas Court of Montgomery County, Ohio[,] Division of Domestic Relations.

3. The final judgment and decree of divorce incorporated a separation agreement that was entered into by Lucian Johnson and Susan Cronenwett, said agreement being concluded on September 30, 1990[,] at Centerville, Ohio....

7. Paragraph I of the Separation Agreement states:

Lucian G. Johnson shall continue to maintain in full force and effect a certain basic life insurance policy that he has at General Motors Corporation[,] and he will immediately name Susan K. Johnson as the irrevocable beneficiary thereof.

8. General Motors Corporation for the benefit of its eligible employees, sponsors, established and maintains an employee welfare benefit plan known as the General Motors Life and Disability Benefits Program. The plan among other things provides those who participate in it with life insurance benefits payable upon their deaths to the beneficiary or beneficiaries designated by them, in accordance with the terms of the plan.

9. Lucian Johnson died on or about June 23, 1995. At the time of his death, he was an employee of General Motors and a participant in the General Motors Life and Disability Benefits Program....

12. Upon his death, Lucian Johnson maintained rights in his life insurance policy with his employer[,] General Motors.

13. A "Designation of Beneficiary Under the General Motors Life and Disability Benefits Program" [form] states that the decedent's beneficiary under the Plan is to be determined in accordance with the provisions of the aforesaid Final Judgement and Decree of Divorce.

14. The designation form that references the disposition of the plan's benefits pursuant to the Final Judgment and

Decree of Divorce is undated and unsigned.

15. The undated and unsigned designation form designates Susan K. Johnson, "ex-spouse," the beneficiary of the insurance proceeds, lists the correct case number and Judge under which the Final Judgment and Decree of Divorce was granted and the County in which the Final Decree was filed.

16. On or about February 18, 1994, a "Designation of Beneficiary Form" was purportedly signed by Lucian G. Johnson, designating as a beneficiary on his General Motors Life and Disability Benefits Program, one Lisa Renee Gross, a "non-relative."

17. Met Life Insurance Company is the claims fiduciary for the General Motors Life and Disability Benefits Program.

18. At the time of Lucian Johnson's death, there was payable under the General Motors Life and Disability Benefits Program[ ] $48,500 in life insurance proceeds.

19. On or about July 19, 1995, Met Life received a Statement of Claim executed by Susan K. Cronenwett, claiming entitlement to the life insurance benefits held by Met Life. Her claim was based on the provisions of the Separation Agreement that was incorporated into the Final Judgment and Decree of Divorce.

20. On or about September 11, 1995, Met Life received a Claimant's statement executed by Lisa Gross as the last designated beneficiary.

21. No payments have been made to either Ms. Cronenwett [or] Ms. Gross from Met Life on the policy covering Lucian G. Johnson.

22. Met Life moved for and was granted permission to deposit with this Court's Clerk of Courts[ ] the insurance proceeds of $48,500 plus accrued interest of $6,635.95 for a total of $55,135.95[,] representing the full benefits payable under the Met Life policy covering Lucian G. Johnson at the time of his death. . . .

(Doc. # 34 at 1–4).[2]

With the foregoing facts in mind, the Court turns now to the issue raised in Met Life's interpleader action, namely whether Cronenwett or Gross is the proper beneficiary of Lucian Johnson's life insurance policy.

### B. Analysis of Insurance Beneficiary Issue

■ As a threshold matter, the Court notes the parties' agreement that the life insurance policy at issue was maintained as part of an "employee welfare benefit plan," within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").[3] Given that Lucian Johnson's insurance pol-

---

**2.** Cronenwett and Gross have set forth other stipulated facts that are not relevant to the insurance beneficiary issue raised by Met Life in its interpleader action.

**3.** As a result of Lucian Johnson's life insurance policy being maintained as part of an ERISA plan, the Court has federal-question jurisdiction over the present interpleader action. See Central States, Southeast and Southwest Areas Pension Fund v. Howell, 227 F.3d 672, 674 n. 2 (6th Cir.2000) (recognizing that "the federal courts have jurisdiction over an action for interpleader to determine the proper beneficiary of benefits payable from an ERISA employee welfare plan"); see also Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 418 (6th Cir.1997) (holding that an interpleader action brought by an insurance company to determine the proper beneficiary under an ERISA plan arises under 29 U.S.C. § 1132(a)(3)(B)(ii) and, therefore, presents a federal question).

icy is part of an ERISA plan, the Court concludes, for the reasons to follow, that resolution of the present dispute turns on whether the 1990 divorce decree between Johnson and Cronenwett constitutes a "qualified domestic relations order."

■ In *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415 (6th Cir.1997), the Sixth Circuit recognized that when an insurance policy is part of an ERISA plan, ERISA generally trumps state law with respect to the designation of beneficiaries. *Id.* at 420. In other words, ERISA requires a plan administrator to award insurance benefits "in accordance with the documents and instruments governing the plan." *Id.* As a result, when a state divorce decree awards insurance benefits in a manner that conflicts with the terms of ERISA plan documents, the divorce decree ordinarily is preempted by federal law. In the present case, application of this general rule would result in Gross receiving the proceeds from Lucian Johnson's life insurance policy. Indeed, the parties have stipulated that the only *properly executed* beneficiary designation form submitted to Met Life by Johnson names Gross as the beneficiary.[4] As a result, in accordance with the documents and instruments governing the life insurance policy, Gross would be the proper beneficiary.

Notably, however, the preemption principle discussed above includes an exception, which lies at the heart of the present dispute. In *Marsh*, the Sixth Circuit recognized that 29 U.S.C. § 1144(b)(7) excepts a divorce decree from ERISA's preemptive reach *if* it constitutes a "qualified domestic relations order" ("QDRO"). *Marsh*, 119 F.3d at 421. Under ERISA,

the phrase "domestic relations order" means:

> any judgment, decree or order (including approval of a property settlement) which—
>
> > (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant; and
> >
> > (II) is made pursuant to a State domestic relations law (including a community property law).

*Id.* (quoting 29 U.S.C. § 1056(d)(3)(B)).

In turn, a "domestic relations order" is "qualified" under ERISA (i.e., it constitutes a QDRO) only if it "clearly specifies" the following:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

*Id.* at 421–422 (quoting 29 U.S.C. § 1056(d)(3)(C)).

■ In the present case, the parties agree that the 1990 divorce decree (and the separation agreement incorporated therein by reference) qualifies as a "domestic relations order" under ERISA. The decree plainly relates to the provision of child support, alimony payments or marital property rights, and it was made

---

4. As noted above, the record also contains an *unsigned* and *undated* beneficiary designation form purporting to name Cronenwett as the "irrevocable beneficiary" under the policy. Given that this form was never executed, Cronenwett does not argue that it alone is sufficient to entitle her to the insurance proceeds at issue.

pursuant to Ohio domestic relations law. The parties dispute, however, whether the divorce decree is a "qualified" domestic relations order (i.e., a QDRO), which is excluded from the preemptive effect of ERISA. If the divorce decree is a QDRO, then Cronenwett is entitled to the life insurance proceeds at issue. This is so because the divorce decree ordered Lucian Johnson to make her "the irrevocable beneficiary" of the life insurance policy that he maintained through General Motors.[5]

■ Upon review, the Court concludes that the divorce decree at issue does qualify as a QDRO. *First,* the divorce decree includes the name and last known mailing address of the participant (Johnson) and each payee covered by the order (Cronenwett). *Second,* the decree incorporates a separation agreement, which provides that Cronenwett is to be "the irrevocable beneficiary" of the life insurance policy at issue. This language makes clear that Cronenwett is to receive one-hundred percent of the benefits due under the policy. *Third,* "since this was a life insurance policy to be paid in a lump sum on decedent's death and not payments from a pension plan, there was no need to specify the number of payments or periods for which the order applies." *Marsh,* 119 F.3d at 422. Given the nature of the policy, the "number of

payments" is, obviously, "one." *Fourth,* the separation agreement, which is incorporated into the divorce decree by reference, identifies "each plan to which such order applies." In particular, Paragraph I of the separation agreement states that it applies to "a certain basic life insurance policy that [Lucian Johnson] has at General Motors Corporation[.]" Given that the divorce decree contains all of the required information discussed, *supra,* the Court concludes that it qualifies as a QDRO.

In opposition to the foregoing conclusion, Gross raises only one argument. Specifically, she contends that the divorce decree fails to satisfy the second QDRO requirement, because it does not specify the percentage of Lucian Johnson's life insurance benefits to be paid to each beneficiary or the manner in which the percentage should be determined. (Doc. # 35 at 2–5). In support of her argument, Gross notes that Paragraph I of the separation agreement *does not* designate Cronenwett as "the irrevocable" *and* "the sole" beneficiary. (*Id.* at 4.). Rather, it merely identifies Cronenwett as "the irrevocable beneficiary." As a result, Gross contends that the separation agreement permitted Lucian Johnson to name her as a second beneficiary, who is entitled to share the insurance proceeds with Cronenwett.[6]

---

5. The fact that Johnson never signed a beneficiary designation form naming Cronenwett as the irrevocable beneficiary is immaterial *if* the divorce decree qualifies as a QDRO. A beneficiary designation form is a *plan instrument* to determine the proper beneficiary. As noted above, however, when a QDRO exists, it "trumps" plan instruments, and the language of the QDRO controls the beneficiary designation. *See, e.g., Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857, 863 (4th Cir.1998). In other words, if the divorce decree in the present case qualifies as a QDRO, then the beneficiary is determined by its language alone, without respect to any beneficiary designation form. *Id.* The only requirement is that the ERISA plan administrator must receive the

QDRO. *Id.* at 863 n. 6. In the present case, Gross does not allege that Lucian Johnson's plan administrator failed to receive a copy of the divorce decree. Consequently, the only issue is whether that divorce decree qualifies as a QDRO.

6. Gross also urges the Court to demand "strict compliance" with the QDRO requirements. (Doc. # 35 at 2–3). In the present case, however, the Court need not determine whether "strict compliance" or "substantial compliance" with the QDRO requirements is necessary. For the reasons set forth more fully, *infra,* the Court concludes that Cronenwett's designation as "the irrevocable beneficiary" unambiguously made her the sole ben-

Based on that premise (i.e., that the separation agreement allowed Johnson to name beneficiaries in addition to Cronenwett), Gross argues that no QDRO exists, because the agreement does not specify the percentage of the benefits to be paid to each of the two women. (*Id.* at 4–5).

 Upon review, the Court finds Gross' argument to be unpersuasive. Although the separation agreement did not name Cronenwett as the "the sole beneficiary," it did designate her as "the irrevocable beneficiary." Under Ohio law, as elsewhere, the designation of an individual as "the irrevocable beneficiary" means "the sole beneficiary."[7] In *Stewart v. Stewart*, 1999 WL 126941 (8th Dist. March 4, 1999) (unpublished), for example, the Ohio Eighth District Court of Appeals reviewed language in a separation agreement that obligated the divorcing husband "to designate and name the minor child *as beneficiary* of his group Life Insurance Policy . . . ." (emphasis added). The husband failed to comply with this requirement and, instead, named his sister as the beneficiary. He then died, and the insurance company filed an interpleader action, asking the trial court to determine the proper beneficiary. The trial court subsequently awarded the insurance proceeds to the child. In so doing, the court rejected the sister's argument that she was entitled to at least a portion of the money, because the separation agreement did not make the

decedent's child the "sole" beneficiary. In fact, as noted above, the separation agreement did not expressly make the child the "irrevocable" beneficiary. Rather, it only required the child to be named "as beneficiary." Nevertheless, the trial court adopted the following reasoning of a magistrate judge:

> . . . The word "beneficiary" [in the separation agreement] is singular, and the sentence in which it is used contains no language that would expand the singular to plural. The parties did not use the word "a beneficiary" or "one of the beneficiaries" so as to show that Defendant had reserved the right to name more than one beneficiary. The clear and unequivocal meaning of the language is that Defendant was to name the parties' son as the singular, thus only, beneficiary of his group life insurance policy.

*Id.* at *2.

Upon review, the Eighth District Court of Appeals affirmed the trial court's judgment, rejecting the proposition that the absence of the word "sole" (i.e., "sole beneficiary") in the separation agreement left the decedent free to add his sister as a second beneficiary. *Id.* at *4 ("[N]or does the use of the term 'beneficiary' imply that decedent was permitted to name more than one beneficiary under the subject life insurance policy.").[8] The reasoning of the

---

eficiary of Lucian Johnson's insurance policy. Consequently, the divorce decree, and the separation agreement incorporated therein, *do* "strictly comply" with the QDRO requirements.

**7.** Although federal law generally preempts state laws which "relate to" an ERISA plan, *see Howell*, 227 F.3d at 676, the Sixth Circuit has looked to state law *to interpret* the terms of a divorce decree in order to determine whether it qualifies as a QDRO, which, as noted above, is excepted from ERISA's

preemptive reach. *See Marsh*, 119 F.3d at 422.

**8.** The Court notes that Cronenwett's position in the present case is significantly stronger than the child's position in *Stewart*. In that case, the divorce decree only obligated the divorcing husband to name his child "as beneficiary." Nevertheless, Ohio's courts interpreted this provision to mean that the child was the sole and irrevocable beneficiary. In the present case, however, the divorce decree and separation agreement expressly obligated Lucian Johnson to name Cronenwett as "the

Eighth District Court of Appeals in *Stewart* is entirely consistent with Ohio law and rulings from numerous jurisdictions, which have recognized that an "irrevocable beneficiary" has a vested right to insurance proceeds and that the insured has no right to name another beneficiary. *See, e.g., Aetna Life Ins. Co. v. Hussey,* 63 Ohio St.3d 640, 590 N.E.2d 724 (1992) (holding that a husband unlawfully attempted to name a beneficiary other than his daughter, who was the "irrevocable beneficiary" pursuant to a separation agreement in a divorce decree); *Prudential Ins. Co. of America v. Boyd,* 781 F.2d 1494, 1496–1497 (11th Cir.1986) (concluding that a divorce decree which required the insured to name his children as "irrevocable beneficiaries" of an insurance policy nullified the insured's attempt to name another beneficiary); *Aetna Life & Casualty Co. v. Spain,* 556 F.2d 747, 749 (5th Cir.1977) (recognizing that a divorce decree which obligated the divorcing husband to name the children of his first marriage as the "irrevocable beneficiaries" of an insurance policy precluded him from naming his new wife as a beneficiary entitled to a portion of the insurance benefits); *Principal Mutual Life Ins. Co. v. Karney,* 5 F.Supp.2d 720, 731 (E.D.Mo.1998) (recognizing that a property settlement and divorce decree which provided for a certain party to be named the "irrevocable beneficiary" of a life insurance policy was valid and enforceable against anyone subsequently named as a beneficiary); *Metropolitan Life Ins. Co. v. Benevent,* 1993 WL 437757 (S.D.N.Y. Oct.22, 1993) (unpublished) (noting that "the designation of the children of a marriage as the irrevocable beneficiaries of a life insurance policy when made pursuant to a divorce decree, vests with the children the right to the proceeds of such a

policy even if the decedent has changed the beneficiary under the policy").

Based on the reasoning and citation of authority set forth above, the Court concludes that Lucian Johnson's court-ordered obligation to name Cronenwett as "the irrevocable beneficiary" divested him of the ability to make Gross an additional beneficiary of his Met Life insurance policy. In addition, given that the divorce decree at issue qualifies as a QDRO, it trumps Johnson's conflicting beneficiary designation form, which names Gross as beneficiary of the Met Life policy. Given that the QDRO awarded the proceeds of that insurance policy to Cronenwett, the Court holds that she is the proper beneficiary of the Met Life policy. As a result, Cronenwett is entitled to receive the insurance proceeds that Met Life has deposited with the Office of the Clerk of Court.

II. *Pending Cross–Claims, Counter Claims, Third–Party Claims and Related Motions*

As noted above, various cross-claims, counter-claims and third-party claims were filed in this action after the Court established procedures for resolving Met Life's interpleader Complaint regarding the proper beneficiary under Lucian Johnson's life insurance policy. In particular, Cronenwett has set forth the following claims: (1) a cross-claim against Gross, in effect seeking a declaratory judgment that she (Cronenwett) is the proper beneficiary under Lucian Johnson's life insurance policy (Doc. # 15 at 3–4); (2) a purported cross-claim against Fidelity for breach of fiduciary duty under ERISA (Doc. # 25); (3) two purported counter-claims against Gross for unjust enrichment and conversion (*Id.*);

---

irrevocable beneficiary." If the divorce decree in *Stewart* unambiguously prohibited the divorcing husband from naming another ben-

eficiary, as Ohio's courts held, the same conclusion is inescapable in the present case.

and (4) an "amended cross-claim/third-party Complaint," asserting her ERISA breach of fiduciary duty claim against Fidelity, General Motors Corporation and General Motors Investment Management Corporation. (Doc. # 43).

In response to Cronenwett's initial "cross-claim" against it, Fidelity filed its own cross-claim against Gross on January 11, 2000, alleging that if it is liable to Cronenwett for breach of fiduciary duty, then Gross would be unjustly enriched by retaining Lucian Johnson's personal savings plan funds. (Doc. # 31 at 5). As noted above, Fidelity also moved for summary judgment on (1) the initial "cross-claim" asserted against it by Cronenwett and (2) its own cross-claim against Gross. (Doc. # 37). Thereafter, Fidelity filed a Motion to Dismiss Cronenwett's "amended cross-claim/third-party Complaint" against it. (Doc. # 44).

In sorting out the foregoing pleadings and Motions, the Court first notes that Cronenwett's original cross-claim against Gross (Doc. # 15) is now moot. In that cross-claim, Cronenwett essentially seeks a declaration that she is the proper beneficiary of Lucian Johnson's Met Life insurance policy. The Court has resolved that issue in Cronenwett's favor, *supra,* in its analysis of Met Life's interpleader action.

■ With respect to Cronenwett's purported cross-claim against Fidelity for breach of fiduciary duty under ERISA (Doc. # 25), the Court notes that she has mislabeled her pleading. When Cronenwett filed her "cross-claim," Fidelity was not a party to this litigation. As a result, she could not properly assert a cross-claim against it. *See* Fed.R.Civ.P. 13(g) ("A pleading may state as a cross-claim any claim by one party *against a co-party* arising out of the transaction or occurrence that is the subject matter either of the original action or of a counter-claim

therein ...." ) (emphasis added). Given that Fidelity was not a party to this action, Cronenwett could only attempt to implead it by filing a third-party complaint under to Fed.R.Civ.P. 14(a).

■ As noted above, however, Cronenwett eventually *did* bring a third-party action against Fidelity when she filed her "amended cross-claim/third-party Complaint," asserting her ERISA breach of fiduciary duty claim against Fidelity, General Motors Corporation and General Motors Investment Management Corporation. (Doc. # 43). Unfortunately for Cronenwett, however, Rule 14(a) only permits a defendant/third-party plaintiff to file a third-party complaint against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the [original] plaintiff's claim against the third-party plaintiff." *See* Fed.R.Civ.P. 14(a); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 2d § 1441 at 295 (1990) (recognizing that impleader under Rule 14(a) "is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action").

In the present case, Cronenwett *does not* allege that Fidelity or the other third-party Defendants are or may be liable to her for all or part of Met Life's interpleader action. In fact, Cronenwett's third-party claim against the third-party Defendants has nothing to do with the interpleader action, which concerns the proper beneficiary of a life insurance policy maintained by Lucian Johnson. In her third-party Complaint, Cronenwett alleges a breach of fiduciary duty under ERISA, by awarding Gross the funds in Johnson's personal savings plan. This claim does not seek to hold the third-party Defen-

dants responsible for any liability that Cronenwett may incur as a result of Met Life's interpleader action. Consequently, Rule 14(a) does not authorize her to seek relief against them by filing a third-party Complaint. Accordingly, the Court hereby dismisses her third-party Complaint as being unauthorized by Rule 14 of the Federal Rules of Civil Procedure, without prejudice to refiling as a separate action. The Motion for Summary Judgment (Doc. # 37) and Motion to Dismiss (Doc. # 44) filed by Fidelity are overruled, as moot.

■ Finally, with respect to Cronenwett's two purported counter-claims against Gross for unjust enrichment and conversion (Doc. # 25), the Court notes that these claims appear to be more properly characterized as cross-claims, given that Cronenwett and Gross both have been named as Defendants in this action brought by Met Life. In any event, "courts generally have ignored the nomenclature actually used by the pleader and have treated the claim as if it had been properly labeled, applying the standards related to that type of claim." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Federal Practice & Procedure, Civil 2d § 1407 at 40 (1990). Under Rule 13(g) of the Federal Rules of Civil Procedure, a party may assert a cross-claim against a co-party if the cross-claim arises "out of the transaction or occurrence that is the subject matter either of the original action or of a counter-claim therein or relating to any property that is the subject matter of the original action." In the present case, Cronenwett's two claims against Gross do not arise out of either (1) the transaction or occurrence that is the subject matter of the original interpleader action brought by Met Life or (2) any counter-claim against Met Life. Nor do Cronenwett's claims against Gross relate to any property that is the subject of Met Life's interpleader

action. As noted, *supra*, the interpleader action concerns only the right of either Cronenwett or Gross to receive the proceeds of a Met Life insurance policy. In contrast, Cronenwett's claims against Gross for unjust enrichment and conversion relate to the funds in a personal savings plan maintained by Lucian Johnson. These claims do not arise out of the same transaction or occurrence that forms the basis of Met Life's interpleader action. Consequently, the Court hereby dismisses Cronenwett's claims against Gross as being unauthorized by Rule 13 of the Federal Rules of Civil Procedure, without prejudice to refiling as a separate action.

If Cronenwett disagrees with the Court's dismissal of her third-party Complaint or her claims against Gross, she may present her argument through a timely Motion under Rule 59(e) of the Federal Rules of Civil Procedure.

Judgment will be entered in favor of Defendant/third-party Plaintiff Susan Cronenwett and against Defendant Lisa Gross on the issue of the proper beneficiary of the Met Life insurance policy maintained by decedent Lucian Johnson.

Judgment will be entered against Defendant/third-party Plaintiff Susan Cronenwett on her third-party Complaint and cross-claims.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.