Kenneth O'NEIL, Personal Representative of the Estate of Patrick M. O'Neil, deceased, Plaintiff,

v.

Carolyn Sue O'NEIL, Defendant.

No. 00–70352.

United States District Court, E.D. Michigan, Southern Division.

Feb. 5, 2001.

Richard J. Bchin, Pelavin & Powers, Flint, MI, for Kenneth D. O'Neil, Personal Representative of the Estate of Patrick·M. O'Neil, Deceased, plaintiff.

Douglas M. Philpott, Susan Philpott–Preketes, Douglas M. Philpott, Flint, MI, for Carolyn Sue O'Neil, defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERTS, District Judge.

### I. *Introduction*

This matter is before the Court on Defendant Carolyn Sue · O'Neil's Motion for Summary Judgment.[1] Defendant was the wife of decedent Patrick O'Neil. Plaintiff Kenneth O'Neil, who is Patrick's Personal Representative, alleges that Defendant violated a Judgment of Separate Maintenance by making a claim for Patrick's Metropolitan Life Insurance ("Met Life") proceeds upon his death. In her Motion

for Summary Judgment, Defendant argues that Patrick never removed her as the beneficiary of his Met Life policy and that, pursuant to the Employment Retirement Income Security Act ("ERISA"), the Judgment was insufficient to extinguish her rights to the proceeds. The Court agrees with Defendant and will therefore grant her Motion for Summary Judgment.

### II. *Analysis*

The resolution of this case is controlled by *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir.1996) and *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997).

In *Pressley,* the decedent, Alvin, had a Met Life policy through his employment with General Motors Company. The *Pressley* court noted that General Motor's group Met Life policy was subject to ERISA. *Pressley* at 127.[2] After designating his wife, Barbara, as the beneficiary of his policy, Alvin and Barbara divorced. In compliance with a Michigan statute, M.C.L. § 552.101, the Judgment of Divorce included the following:

> IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff and Defendant shall hereafter own any and all items of personal property including, but not limited to household furniture, bank accounts, pension or retirement funds, stock, bonds or insurance policies or pension plans now in his or her possession, free and clear of any claim thereto by the other; each shall hold the·other harmless as to any debt thereon unless otherwise provided herein.
>
> . . . .

---

1. The Court originally scheduled this matter for oral argument on February 27, 2001. However, now finding that oral argument will not be beneficial, the Court will decide this matter on the brief pursuant to E.D. Mich. Lr 7.1(e)(2).

2. In this case, Patrick's Met Life policy was also part of a group plan he obtained through his employment with General Motors. The parties do not dispute that the Met Life policy at issue is generally governed by ERISA.

## STATUTORY INSURANCE PROVISION

. IT IS FURTHER ORDERED AND ADJUDGED that any rights of either party in any policy or contract of life, endowment or annuity insurance of the other, as beneficiary, are hereby extinguished unless specifically preserved by this judgment.

*Pressley* at 127–128.

■ Notwithstanding the provisions in the Judgment of Divorce indicating that Barbara had no further rights to Alvin's life insurance policy, he never filed a change of beneficiary form with Met Life. Upon his death, the trial court awarded Alvin's benefits to Barbara, and the Sixth Circuit Court affirmed. In so affirming, the Sixth Circuit Court recognized that, pursuant to 29 U.S.C. § 1144(a), ERISA preempts all state laws that "relate to" an ERISA plan.[3] A designation of beneficiaries has a connection to an ERISA plan and is therefore a matter within ERISA's preemption of state law. *Pressley* at 129.

The *Pressley* court further held that, under ERISA, a broad waiver of rights is insufficient for a . named beneficiary's rights to be extinguished:

> In *McMillan [v. Parrott,* 913 F.2d 310 (6th Cir.1990) ], this Court considered essentially the same question that it faces in this case: whether under the provisions of ERISA the former spouse of a decedent waives her interest as designated beneficiary of the decedent by reason of a broad waiver of rights in the couple's divorce decree. The *McMillan* Court answered that 'the explicit provisions of ERISA make clear that [the decedent's former spouse] did not effectively waive her interest as [the

decedent's] beneficiary.' 913 F.2d at 312.

Section 404(a)(1)(D) of ERISA requires that a plan administrator discharge his duties 'in accordance with the documents and instruments governing the plan....' 29 U.S.C. § 1104(a)(1)(D). The Court in *McMillan* found that section to establish a clear mandate that plan administrators follow plan documents to determine the designated beneficiary. 913 F.2d at 312. Accordingly, the Court held that the plan documents naming the decedent's ex–wife as beneficiary of the plan controlled, making her the decedent's beneficiary. *Id.*

*Pressley* at 130.

Under the Met Life plan at issue in the *Pressley* case, the beneficiary was determined by reference to a form that was filed with and maintained by the insurance company. Since the form relating to Alvin's policy designated Barbara as the beneficiary and was never changed, the court found her to be the proper beneficiary of Alvin's life insurance proceeds. *Id.*

In contrast to *Pressley,* the court in *Marsh, supra.,* held that the judgment of divorce at issue in that case effectively changed the beneficiaries of the decedent's life insurance policy. The decedent, James, and his wife, Linda, divorced in 1978. Their judgment of divorce included a provision similar to the one cited above in *Pressley,* except that it specifically identified the new beneficiaries and the insurance policy affected by the change of beneficiaries..

IT IS FURTHER ORDERED AND ADJUDGED that all rights of either party in and to the proceeds of any

---

3. Section 1144(a) provides:
   Except as provided in subsection (b) of this
   ° section, the provisions of this subchapter
   and subchapter III of this chapter shall
   supersede any and all State laws insofar as

they may now or hereafter relate to any employee benefit plan described in section 1003(a) .of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

policy or contract of life insurance, endowment, or annuity upon the life of the other in which he or she was named or designated as beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the owner of such policy or such named beneficiary as he or she shall affirmatively designate except that the minor children of the parties shall be named as beneficiaries to the extent of two thirds ( ⅔) of the proceeds of Plaintiff's insurance through Metropolitan Life Insurance Company, maintained at his place of employment.

*Marsh* at 417. The judgment defined "minor children of the parties" as "DANA LYN MARSH, born August 24, 1965; and JAMES R. MARSH, III., born December 7, 1967." *Id.*

After reviewing the judgment of divorce at issue, the *Marsh* court found that an exception to the preemption clause of § 1144(a) applied to that case. Under § 1144(b)(7), the federal preemption provided in "[s]ubsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title) . . . ."

Section 1056(d)(3)(B)(i) defines a "qualified domestic relation order" ("QDRO") as an order:

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met . . . .

As stated in § 1056(d)(3)(B)(i)(II), the requirements of a QDRO are set forth in § 1056(d)(3)(C), which states as follows:

A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

The *Marsh* court held that the judgment of divorce before it substantially complied with § 1056(d)(3)(C) and was therefore effective to change the beneficiaries from Linda to the children of the parties. The court reasoned:

· The District Court held that the divorce decree here did not meet [the requirements of § 1056(d)(3)(C)]. First, the Court found it deficient because it did not specify the amount or percentage of each child's benefits, rather it provided that the two minor children should receive two-thirds of the policy. The decree was thus very clear regarding the percentage they collectively should receive. . . .

Michigan ordinarily presumes equal distribution.

. . .

The District Court also felt the decree was deficient in not specifying 'the number of payments or periods for which such order applies.' Since this was a life insurance policy to be paid in a lump sum on decedent's death and not payments from a pension plan, there was no

need to specify the number of payments or periods for which the order applies.

While the divorce decree did not specify where deceased was employed, the decree identified the policy as one through Metropolitan Life Insurance Company maintained at his place of employment. This permitted identification of the plan and is not ambiguous.... The decree contains the addresses of the children since it provides the address of their mother in whose custody they were placed.

We believe the divorce decree here was specific enough to substantially comply with ERISA's requirements. No essential information is lacking.

*Marsh* at 422.

■ Comparing this case to *Pressley* and *Marsh,* this Court finds the Judgment of Separate Maintenance to contain the type of broad insurance provision that *Pressley* ruled insufficient to overcome ERISA preemption. The insurance provision at issue states:

IT IS FURTHER ORDERED that Defendant shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of or insuring the life of Plaintiff, and the Court makes no reservation therefor.

(Dft's Br., Ex. 2 at 2).

Unlike the provision at issue in *Marsh,* the broad language in the insurance provision here does not substantially comply with § 1056(d)(3). The most vital omission of the provision in this case is that of an alternate payee. A QDRO is defined as one that "recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." Section 1056(d)(3)(B)(i). Hence, by its nature, a QDRO must include an alternate payee.

Thus, the requirement of § 1056(d)(3)(C)(i)—that the QDRO must include "the name and mailing address of each alternate payee covered by the order"—is likely the most essential requirement of subsection (C).

In this case, the insurance provision does not provide any means whatsoever for identifying an alternate payee. The *Marsh* court held that, as long as the order contains information that would permit identification of the alternate payee's address, the order will substantially comply even if the address was not specified. *Marsh* at 422. Following that logic, the Court would perhaps be permitted to find substantial compliance with § 1056(d)(3)(C)(i) if an alternate payee were adequately described, even though not named. Here, no alternate payee is described in the Judgment. Consequently, the Judgment cannot be considered a QDRO.

Another important requirement that is missing from the Judgment at issue is "each plan to which such order applies." There is furthermore no descriptive language in the insurance provision that would assist the Court in specifically identifying the insurance policies covered by the Judgment.

■ Plaintiff argues that the Insurance Provision is sufficient. He states, "It is ... very simple to determine that the Plan in question was a Metropolitan Life insurance welfare benefit and that the Plaintiff's estate would be the beneficiary of the Met Life insurance proceeds." (Plt's Br. at 3). Perhaps it could be deduced from the insurance provision that Patrick intended to have his estate serve as the alternate payee of his Met Life insurance proceeds. Nonetheless, in order to qualify for a QDRO, the Judgment must have at least substantially complied with § 1156(d)(3). It does not. Rather, it is the very type of

broad provision that the *Pressley* court found to be insufficient to avoid ERISA preemption.

As a consequence, this Court must look to the Met Life documents to determine the proper beneficiary of Patrick's life insurance proceeds. *Pressley* at 130. The Special Designation of Beneficiary form in Met Life's records indicates that Defendant was the beneficiary and Patrick never rescinded that designation (Dft's Br., Ex. 1). Accordingly,

**THE COURT HEREBY GRANTS** Defendant's Motion for Summary Judgment [document 15].