This timely appeal comes for consideration upon the record in the trial court, and the Appellant's brief. Defendant-Appellant Shelby Kay Lohr (hereinafter "Lohr") appeals the decision of the Mahoning County Court of Common Pleas granting the motion of Plaintiff-Appellee Estate of Thomas A. Dailey (hereinafter "the Dailey Estate") for summary judgment awarding the proceeds of Dailey's life insurance policy to his heirs rather than the policy's named beneficiary. For the following reasons, the decision of the trial court is reversed and the proceeds are ordered paid to Lohr as the policy's named beneficiary.
Decedent Thomas Dailey was employed at the General Motors Lordstown, Ohio facility. As of September 24, 1985, he had named Shelby Lohr as the beneficiary of his life insurance policy through General Motors. Dailey and Lohr married each other on September 16, 1986, however, their marriage was terminated with a Separation Agreement (hereinafter "Agreement") that became incorporated into a Dissolution Decree (hereinafter "Decree") on December 18, 1991.
Dailey died on October 4, 1996 and his estate administrator is the Plaintiff-Appellee in this case. Dailey's Metropolitan Life Insurance policy (hereinafter "Met Life") was part of his benefit plan while working for General Motors and falls within the scope of the Employee Retirement Income Security Act (hereinafter "ERISA"). The policy coverage amount of $42,500 was payable to the beneficiary at Dailey's death.
The issue in this case is whether the death benefit proceeds of Dailey's insurance plan are payable to Lohr, the named beneficiary in the policy itself, or whether the language in the Decree purporting to relinquish Lohr's interest in Dailey's life insurance policies is valid. It is undisputed that the Met Life policy named Lohr as the beneficiary in the policy instrument and that Dailey never changed this beneficiary designation. On April 10, 1993, Dailey did, however change his personal savings plan by removing Lohr as beneficiary and designating his two children, Thomas A. Dailey, Jr., and Heather R. Evans as beneficiaries.
The Dailey Estate first brought suit in the Mahoning County Court of Common Pleas against Met Life and Lohr for declaratory judgment that decedent's life insurance proceeds were to go to his children rather than to Lohr. Met Life successfully removed the case to federal district court by invoking ERISA's relevant pre-emption provisions. The Dailey Estate dismissed the case without prejudice.
The Dailey Estate then brought the instant suit against Lohr as sole defendant in the Mahoning County Court of Common Pleas alleging breach of contract and unjust enrichment. The Dailey Estate specifically contends Lohr breached the terms of the Agreement and that she was unjustly enriched by accepting decedent's life insurance proceeds. At a pre-trial conference on November 17, 1999, the parties made cross-motions for summary judgment and on January 4, 2000, the trial court entered judgment in favor of the Dailey Estate which is the basis of this appeal. As Appellee failed to file a brief, pursuant to App.R. 18(c) we may accept Appellant's statement of facts and issues as correct and reverse the judgment if Appellant's brief reasonably appears to sustain such action.
Lohr's sole assignment of error alleges:
 "The trial court erred by upholding language in a state divorce decree without an accompanying Qualified domestic relations order that purported to award life insurance proceeds to a person other than the named beneficiary of a group benefit policy governed by E.R.I.S.A."
The trial court decided this case upon a motion for summary judgment pursuant to Civ.R. 56(C), which shall be granted if: 1) no issue of material fact remains to be litigated; 2) the moving party is entitled to judgment as a matter of law; and, 3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Davis v. Loopco Industries,Inc. (1993), 66 Ohio St.3d 64, 609 N.E.2d 144. The trial court found there were no genuine issues of material fact and granted judgment as a matter of law in favor of Dailey's Estate.
When reviewing the trial court's grant of summary judgment, the appellate court uses the same standard as the trial court. Parenti v.Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829,586 N.E.2d 1121, 1123. The review of the instant appeal is therefore denovo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243,1245, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241, 245.
State courts are competent to decide whether or not ERISA preempts state law claims. NGS Am., Inc. v. Jefferson (C.A.6, 2000), 218 F.3d 519,526-527. Accordingly, the trial court considered the federal preemption provisions of ERISA as well as ERISA's narrow exception for a Qualified Domestic Relations Order (hereinafter "QDRO") which permits the application of state domestic relations law.
 "One of the principal goals of ERISA is to enable employers `to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing claims and disbursement of benefits.'" Egelhoff v. Egelhoff (2001), 532 U.S. 141, 148, 121 S.Ct. 1322, 1328, 149 L.Ed. 264, 272, citing Fort Halifax Packing Co. v. Coyne, (1987), 482 U.S. 1, 9, 96 L.Ed.2d 1, 107 S.Ct. 2211.
The scope of ERISA has been established by both statute and case law. The federal statutory preemption of ERISA claims in the instant case is rooted in 29 U.S.C. § 1144(a), which states:
"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."
The designation of beneficiaries in connection with an ERISA plan is generally considered to be a matter within ERISA's pre-emption of state law. Metropolitan Life Ins. Co. v. Pressley (C.A.6, 1996), 82 F.3d 126,129. Therefore, the litigation surrounding Dailey's designation of Lohr as the beneficiary under the Met Life policy in the instant case is the type of issue that would usually be federally preempted and not decided under state law.
However, despite the broad preemptive sweep of ERISA there is an express statutory exception for a QDRO that awards proceeds to someone other than the named beneficiary. U.S.C. § 1056(d)(3).
To qualify for the statutory exception, the QDRO at issue must include the following four essential elements:
"(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order;
(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, to the manner in which such amount or percentage is to be determined;
(iii) the number of payments or period to which such order applies, and;
(iv) each plan to which such order applies. 29. U.S.C. § 1056(d)(3)" Metropolitan Life v. Marsh (C.A.6, 1997), 119 F.3d 415,421-422.
Concluding the QDRO in the instant case satisfied the criteria to meet the exception, the trial court issued judgment as a matter of law in favor of the Dailey Estate. The trial court reasoned the percentage to be paid to the beneficiary pursuant to element(ii) and the number of payments to be made to the beneficiary under element (iii), were easily ascertained because Dailey's policy was to be paid in a lump sum to a single beneficiary. The trial court also used the Decree's express reference to decedent's employment at General Motors, coupled with the Decree's other language stating neither party has any interest in the other party's death benefit or term life insurance to reasonably conclude that the Met Life policy was covered by the domestic relations order, satisfying element(iv).
However, the first element of the QDRO exception was not explicitly met in the instant case. Although Dailey's name and address are expressly included in the domestic relations order, the name and address of the alternate payee(s) are not. This is problematic.
"The most vital omission of the provision in this case is that of an alternate payee. A QDRO is defined as one that `recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan. Section 1056(d)(3)(B)(i). Hence, by its nature, a QDRO must include an alternate payee. Thus, the requirement of [Sec.]1056(d)(3)(C)(i) — that the QDRO must include "the name and mailing address of each alternate payee covered by the order" is likely the most essential requirement of subsection(C)." O'Neil v. O'Neil, (E.D. Michigan 2001) 136 F. Supp.2d 690, 694.
Relying upon its finding that a QDRO existed, the trial court gave effect to the Agreement that had been incorporated into the decree under Ohio law. The trial court then relied upon Phillips v. Pelton (1984),10 Ohio St.3d 52, 53, 461 N.E.2d 305, 306 for the proposition that Ohio lawgives effect to an agreement in which a party disclaims an interest in aninsurance policy after a divorce. While this correctly states thePhillips decision, it is a misapplication of the law by not adhering tothe federal ERISA standards.
 Contrary to the trial court's determination, Lohr argues persuasivelythat the Agreement, which was incorporated into the decree, is not anadequate QDRO to invoke the preemption exception. This argument isdispositive of the case as ERISA plan administrators are bound to followthe instruments governing the plan even when the former spouse is named abeneficiary. McMillan v. Parrott (C.A.6, 1990), 913 F.2d 310.
 In Marsh, the court did not require strict compliance with section1056(d)(3)(B)(i) to uphold the preemption exception for a decree that"substantially complied" with the statute. Marsh, supra at 422. The trialcourt here relied heavily upon Marsh in reaching its conclusion, citingMarsh for the proposition that the policy of carrying out the intent ofthe parties may justify exempting certain decrees from ERISA'spre-emption, even though the decrees do not literally satisfy therequirements of section 1056(d)(3)(B)(i).
 Plain and unambiguous statutory language leaves no need to resort toother rules of construction or interpretation. State ex rel. Stanton v.Zangerle (1927), 117 Ohio St. 436. The trial court conceded the Marshdecision was not based upon strict compliance, specifically noting"Candidly, it seems that the Court in Marsh went to significant lengthsto insure that equity and the intent of the parties was carried out."Despite the trial court's reading into the Marsh court's motives, Marshis distinguishable from the situation at bar. The Marsh court clearlystated it was basing its decision upon the fact that the divorce decreeat issue was written before ERISA was amended in 1984. Marsh, supra at422. The decree in the instant case was entered on December 18, 1991,well after the amendment to ERISA.
 Further, unlike the fact pattern in Marsh, the facts in the case at barmirrors those in O'Neil, which lead to that court's determination thatbecause there was no alternate payee listed and the resultant dilemma intrying to determine one, the named beneficiary must receive theproceeds.
 "In this case, the insurance provision does not provide any meanswhatsoever for identifying an alternate payee. The Marsh court heldthat, as long as the order contains information that would permitidentification of the alternate payee's address, the order willsubstantially comply even if the address was not specified. Marsh at422. Following that logic, the Court would perhaps be permitted to findsubstantial compliance with Sec. 1056(d)(3)(C)(i) if an alternate payeewere adequately described, even though not named. Here, no alternatepayee is described in the Judgment. Consequently, the Judgment cannot beconsidered a QDRO." O'Neil at 694.
 The O'Neil court did allude to the possibility of an estate being thealternate payee.
 "Perhaps it could be deduced from the insurance provision that[decedent] intended to have his estate serve as the alternate payee ofhis Met Life insurance proceeds. Nonetheless, in order to qualify for aQDRO, the Judgment must have at least substantially complied with Sec.1156(d)(3). It does not." O'Neil at 694.
 In O'Neil, as the case at bar, neither the estate nor anyone else wasdesignated as alternate payee. Following the decision in O'Neil we areprecluded from expanding the Marsh ruling to decrees issued after theamendments to ERISA in order to find a QDRO where an alternate payee isnot listed.
 This court has considered a somewhat similar ERISA situation inRobinson v. Rodi (August 26, 1998), Columbiana App. No. 96 CO 58,unreported, holding the ex-spouse's waiver in the divorce settlement inthat case was sufficient to relinquish the rights to the benefits of theinsurance policy, despite still being designated the named beneficiary.However, there are significant differences between this case andRobinson, which make it distinguishable from the case at bar. First, theseparation agreement at issue in Robinson was entered into in 1979, priorto the 1984 ERISA amendments. Secondly, the central issue in the case atbar is whether there is an adequate QDRO, which Robinson did notaddress.
 Our analysis here is supported by decisions from within the SixthCircuit which lead us to hold the divorce decree at issue is inadequateto prevent federal preemption by ERISA, and does not constitute a validwaiver. The Sixth Circuit gave its clearest interpretation of ERISA as itapplies to these circumstances in Central States Southeast SouthwestAreas Pensions v. Howell (C.A.6, 2000) 227 F.3d 672.
 "We have explicitly and repeatedly held that state court divorcedecrees purporting to affect the benefits payable from an ERISA plan arepreempted. See McMillan v. Parrot, 913 F.2d 310, 311 (6th Cir., 1990);Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, (6th Cir., 1996)(decedent Alvin Pressley); Czarski v. Bonk, 1997 U.S. App. Lexis 23188,No. 96-1444, 1997 WL 535773 (6th Cir., Nov. 4, 1997); Hendon v. E.I.DuPont de Nemours and Co., 1998 U.S. App. Lexis 7573, No. 96-6233, 1998WL 199824 (6th Cir., Apr 13, 1998). In each of the cited cases, however,the surviving spouse had waived the right to receive benefits from thepolicies as part of a divorce settlement, but the deceased spouse hadfailed to change the beneficiary card. In each case, we held that theERISA plan administrator must pay the ex-spouse the insurance proceedsdespite the waiver in the divorce settlement. Under these circumstances,the law of this Circuit is clear — the beneficiary card controlswhom the plan administrator must pay. See McMillan, 913 F.2d at 311-312("The clear statutory command, together with the plan provisions, answerthe question; the documents control, and those name [the ex-spouse].")"Id. at 676-677.
 The District Court for the Western Division of Michigan, followingCentral States, also clearly and succinctly decided the same issue weface at bar, finding;
 "Because the judgment of divorce is not a QDRO, the provisions of thejudgment of divorce purporting to extinquish [the ex-spouse's] rights to[decedent's] life insurance policy are pre-empted by ERISA. ERISArequires the Plan to follow plan documents to determine the designatedbeneficiary. Smurr v. Reliance Standard Insurance Co., 2001 U.S. Dist.Lexis 15100."
 Following Central States and Smurr, we hold the instant waiver isinvalid. As the assignment of error is meritorious, Lohr is entitled to the policy proceeds as the designated beneficiary. The decision of the trial court is reversed.
Donofrio, J., concurs.
Waite, J., concurs.