NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0156n.06

Case No. 17-5811

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 27, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HUMANA INSURANCE COMPANY OF KENTUCKY, | ) ) ) | |
|     Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| WHITNEY O'NEAL, | ) | |
|     Defendant-Appellant, | ) ) | |
| TESSA M. PERKINS, Individually and as Administrator of the Estate of Ted Wesley Hamilton, | ) ) ) | |
|     Defendant-Appellee. | ) ) ) | |

Before: MERRITT and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

**MERRITT, Circuit Judge.** This is an appeal from an interpleader action by plaintiff Humana Insurance Company of Kentucky to determine the beneficiary of the life insurance proceeds between two competing claims for the benefit made by defendant Whitney O'Neal, the ex-girlfriend of the decedent, and defendant Tessa Perkins, sister of the decedent and the administrator of his estate. Humana's life insurance plan is regulated by the Employee Retirement Income Security Act of 1974, and this action arises under 29 U.S.C. § 1132(a)(3)(B)(ii).

---

[*] The Honorable Robert H. Cleland, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

**I.**

The decedent, Ted Hamilton, was a participant in the Humana Basic Life Insurance Plan, an ERISA-regulated employee welfare benefit plan sponsored, self-funded and administered by Humana. A basic life insurance benefit was provided to all employees. The decedent's life insurance benefit was $94,000 based on a number of factors, including decedent's age and salary at the time of his death. The Plan provided that the employee could name a beneficiary or, if a beneficiary was not named, Humana would pay the benefit at its option to either the surviving spouse or the estate. Hamilton died on August 5, 2015. At the time of his death, Hamilton was not married and had no dependents. According to Humana, Hamilton had used its online enrollment platform and named defendant O'Neal as the primary beneficiary in 2014. The next year, during the reenrollment period in 2015 several months prior to his death, Hamilton did not name a beneficiary.

Humana received claims from both the administrator of Hamilton's estate, defendant Tessa M. Perkins, and O'Neal, the named beneficiary of the policy in 2014. Humana contacted O'Neal and Perkins informing them that their claims were adverse to each other and requesting that the competing claimants attempt to settle the matter so as to preserve the benefit from litigation fees and costs. Interpleader Complaint at ¶ 26; Letters dated March 25, 2016. Humana informed Perkins and O'Neal that it had not yet denied the claim or distributed the benefit, and advised them that it would be forced to file an interpleader action if they could not resolve the dispute between themselves.

A year after Hamilton's death, Perkins and O'Neal still had not resolved their dispute over entitlement to the life insurance benefit. Because Humana believed that it likely faced exposure to a suit and possible double liability if it awarded the benefit, it filed an interpleader

action pursuant to Federal Rule of Civil Procedure 22 naming O'Neal and Perkins as defendants.[1]  In response, O'Neal filed a crossclaim against Perkins and a counterclaim against Humana.  O'Neal later voluntarily dismissed her crossclaim against Perkins.  At the conclusion of discovery, the matter culminated in a Motion for Judgment on the Record by O'Neal, Humana's Motion to Dismiss O'Neal's Counterclaim, Humana's Motion for Attorney Fees, a Motion for Summary Judgment by Perkins, and a Motion for Judgment on the Pleadings by O'Neal.  The district court granted Humana's motion to dismiss and denied its motion for attorney fees, granted Perkins' motion for summary judgment, and denied O'Neal's motion for judgment on the pleadings and motion for judgment on the record.  *Humana Ins. Co. of Ky. v. O'Neal*, No. 16-cv-173, 2017 WL 3015173 (E.D. Ky. July 14, 2017).  This appeal followed.

## II.

Although O'Neal's brief on appeal does not outline her issues on appeal with precision, it appears that she challenges the district court's opinion and order on the following grounds: (1) Humana should not have been allowed to bring an interpleader action; (2) Humana failed to exhaust administrative remedies before bringing the interpleader action; (3) the district court should not have allowed any discovery; (4) the district court erred in granting Humana's motion to dismiss the counterclaim; (5) the district court erred in granting Perkins' motion for summary judgment and awarding the life insurance benefit to the decedent's estate; and (6) the district

---

[1] Federal Rule of Civil Procedure 22(a) provides:

(a) Grounds.

> (1) By a Plaintiff. Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

>> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

>> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

> (2) By a Defendant. A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

court erred in denying O'Neal's motion for judgment on the pleadings and motion for judgment on the record.[2]

## A. <u>O'Neal's Procedural Challenges to the Proceedings Below</u>

Humana brought this interpleader action pursuant to Federal Rule of Civil Procedure 22. Rule 22(a) interpleader allows a party to join all other claimants as adverse parties when its claims are such that it may be exposed to multiple liability. This permits the insurance company, here Humana, as the stakeholder who has no claim to the money and is willing to release it to the rightful claimant, "to put the money . . . in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) (quoting Zechariah Chafee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936)).

O'Neal continually litigated the proceeding below as if it were an ERISA action challenging the denial of benefits, and she continues to persist with this approach on appeal. Humana did not deny O'Neal's claim for benefits so this is not a typical ERISA benefits action. Humana took no position on the outcome as between O'Neal and Perkins and placed the benefit amount in the district court registry. There is no "administrative record," although Humana communicated with both O'Neal and Perkins before filing the interpleader action. The correspondence, the Plan documents, and other documents under Humana's control concerning the decedent's benefit choices are all part of the record below and were considered by the district court. In her briefs on appeal, O'Neal intertwines arguments concerning the appropriateness of an interpleader action by Humana, whether Humana was required to exhaust

---

[2] Humana does not appeal the district court's denial of attorney fees. O'Neal argues that she is entitled to prejudgment interest and attorney fees, but she did not make this argument below and the district court did not address it in its opinion and order.

administrative remedies before bringing suit in federal court, and whether it was proper for the district court to order discovery to gather information outside the "administrative record."

We can quickly dispose of O'Neal's procedural challenges. We have repeatedly authorized use of the interpleader process where there are competing claims to an ERISA benefit. *See, e.g., Marsh*, 119 F.3d at 418. Humana was not required to investigate the competing claims and make a determination regarding the proper recipient of the death benefit. This was not a case where Humana had the discretion to determine how to distribute the life insurance proceeds. Humana is required to award the benefit to the designated beneficiary according to the decedent's designation under the Plan. Given the protracted dispute between O'Neal and Perkins in the year after Hamilton's death, Humana faced a real risk of litigation and possible double liability had it made a benefits decision, and the filing of an interpleader action was appropriate.

Because Humana properly instituted an interpleader action below, it was not required to exhaust administrative remedies. When a plan participant challenges a benefits decision, he is generally required to exhaust administrative remedies before coming to federal court to allow "plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (internal quotation marks and emphasis omitted). That is not the situation here. There was no benefits decision by Humana to review.

Relatedly, O'Neal complains that the district court erred in granting discovery and not limiting its decision to the "administrative record." The district court ordered discovery during a telephone conference on December 20, 2016. O'Neal's lawyer objected to any discovery saying

"this is a straightforward ERISA benefits case, and . . . the posture and procedure should be based upon the [administrative record alone in accordance with] *Wilkins* [*v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998)]." Tr. at 6. The district court judge explained that this was not a typical ERISA benefits action and that without discovery to attempt to determine the intent of the decedent, O'Neal would lose because there was no beneficiary designated by decedent in 2015. *Id.* at 8. O'Neal continues to argue on appeal that allowing discovery in an ERISA action is error. When interpleader is properly invoked, as it is here, the court determines the respective rights of the claimants to the fund or property at stake through the normal litigation processes, including pleading, discovery, motions, and trial. *United States v. High Tech. Prods., Inc*., 497 F.3d 637, 641 (6th Cir. 2007)

## B. O'Neal's Counterclaim Against Humana

In her counterclaim against Humana, O'Neal claims that Humana breached its fiduciary duty to administer the Plan benefits in accordance with the terms of the Plan. ERISA requires plan fiduciaries to discharge their duties "with the care, skill, prudence, and diligence" necessary under the circumstances. 29 U.S.C. § 1104(a)(1)(B). O'Neal argued that Humana breached its fiduciary duty to her because it failed to administer the plan benefits in accordance with the Plan terms and because it failed to answer her questions. The district court disagreed and dismissed her counterclaim. *Humana,* 2017 WL 3015173, at *4. She now claims on appeal that she raised Humana's

> failure to fulfill its fiduciary duties, not as a separate cause of action, but to demonstrate culpability in an interpleader action and its failure to administer the Plan in accordance with statute, regulations, and the Plan document itself. O'Neal only has a benefits claim under 29 U.S.C. § 1132(a)(1)(B). But this court should analyze the actions of Humana to clarify the obligations of a fiduciary and find Humana culpable.

O'Neal's Initial Br. at 52-53. Despite O'Neal's confusing position, we can unequivocally say that Humana did not breach any fiduciary duties. Humana received two competing claims for a benefit. It explained the competing claims in a letter sent to O'Neal on December 15, 2015. Humana did its best to answer all of O'Neal's questions. As O'Neal's own exhibits to her counterclaim and motions demonstrate, Humana provided documents, engaged in correspondence and phone calls with the two claimants or their lawyers, provided a designated point person to handle questions, responded to discovery requests, and deposited the benefit at issue in the court registry. It remained firmly neutral in the dispute between O'Neal and Perkins. The district court properly dismissed O'Neal's counterclaim against Humana.

**C.     O'Neal's Motion for Judgment on the Pleadings and Perkins' Motion for Summary Judgment Regarding Distribution of the Life Insurance Benefit**

The main objective of O'Neal's appeal is to seek reversal of the district court's determination that Perkins is entitled to the life insurance proceeds. She challenges the district court's grant of Perkins' motion for summary judgment and the denial of her motion for judgment on the pleadings, the two motions below focusing on this issue.[3]

The plain language of ERISA directs that benefits are to be paid "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Courts must not look beyond the plan documents to determine the beneficiary. *Marsh*, 119 F.3d at 420 ("ERISA itself supplies the rule of law for determining [a plan] beneficiary."); *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996) ("[ERISA] establish[es] a clear mandate that plan administrators follow plan documents to determine the designated beneficiary."). The relevant language in the Plan provides as follows:

---

[3] The district court considered O'Neal's motion for judgment on the record as part of her motion for judgment on the pleadings.

BENEFICIARY FOR BASIC TERM LIFE

The Employee may name any beneficiary he or she chooses. The Employee may also change a named beneficiary at any time by notifying Us in writing or by Electronic submission. The change will be effective on the date the Employee signs/submits the form. If We make a payment before receiving the change form, We are released from further liability to the extent of the payment.

If a payment is to be made to two or more beneficiaries but the Employee has not specified the portions payable to each, the payment will be shared equally. If the Employee has not named a beneficiary, or if the beneficiary he or she named is not alive at the Employee's death, the payment will be made, at Our option, to any one or more of the following:

Your legal spouse; or
Your estate.

Certificate of Insurance at 7.

Humana's basic life insurance coverage is available to all full-time employees. The employee does not need to participate in open enrollment to receive coverage. If an employee does not participate in open enrollment and designate a beneficiary, the life insurance coverage is not waived and the death benefit is distributed in accordance with the Plan—to the surviving spouse or the estate, at the option of the Plan administrator.

The undisputed facts of this case establish that decedent enrolled in Humana's basic group life insurance plan in 2014 and designated O'Neal as the sole beneficiary. Screenshots of the computer screen that decedent submitted during open enrollment in 2014 show that in the "Life Coverage" section, "Whitney Oneal [sic]—100%" is listed under the "Primary Beneficiary" designation. The facts also show that he did not affirmatively select O'Neal, or any named beneficiary, when he completed the online reenrollment in 2015. On the screenshot from the May 14, 2015 enrollment, no beneficiary is listed under the "Life Coverage" section. The question is whether Hamilton's designation of O'Neal in 2014 holds over to 2015 because he failed to select a named beneficiary that year, as O'Neal contends, or whether Hamilton made an affirmative choice not to name a beneficiary in 2015, as Perkins contends, and the benefit should

go to his estate. The Plan documents, and Humana's policy and practice, establish that an employee must designate a beneficiary every year, even if it is the same beneficiary as the prior year.

O'Neal argues that because there was no requirement in the Plan language for the employee to redesignate a previously-named beneficiary every year, a beneficiary designation remains in effect until "changed." The Plan language does not address whether a beneficiary must be redesignated each year, but it does not prohibit Humana from periodically giving employees an affirmative opportunity to designate a new beneficiary—or to leave the designation blank and allow the Plan to distribute proceeds according to its terms.

An examination of other plan documents reveals that participants are instructed affirmatively to select a beneficiary during each reenrollment period, even if it is the same beneficiary as the prior year. Prior to open enrollment season, Humana provides all employees with an Enrollment Booklet describing the various benefit options. Under the heading "Life Insurance" there is a subsection labeled "Basic Life." It advises employees that they automatically receive basic life insurance and the benefit cannot be waived, and it advises that they may purchase additional term life insurance coverage if they choose. With respect to the basic life insurance coverage, the Enrollment Booklet provides as follows:

> • You should also designate beneficiaries for each of your life insurance plans.
> • You can choose beneficiaries from a drop-down list that's populated with all of your dependents.
> • Or you can add beneficiaries by clicking "Add Other" and entering their demographic data.

Those instructions indicate that a Plan participant should affirmatively select a beneficiary from the drop-down menu, or add a new beneficiary and enter the information for them. Nowhere do the instructions indicate that beneficiaries named in prior years will automatically remain as the named beneficiaries.

In their answers to Perkins' interrogatories, Humana's Human Resources department explained that "[t]he names of beneficiaries need to be re-entered each year during the open enrollment process. For the convenience of the participant, all dependents and previously identified beneficiaries to the specific benefit are offered to the participant via a drop down box and are visible to the participant for selection." Humana's Answers and Responses to Perkins' First Set of Interrogatories, Requests for Production of Documents, and Request for Admissions to Humana at 8. Humana confirmed that its policy was to require the employee affirmatively to select a beneficiary each year during open enrollment and not to regard a previously named beneficiary as the beneficiary under the Plan if not redesignated. Interpleader Complaint at ¶ 17; Humana's Answers and Responses to Perkins' First Set of Interrogatories, Requests for Production of Documents, and Request for Admission at 8, 13.

This explanation comports with the instructions provided to participants in the Plan documents and communications with employees. Once the employee logs into the enrollment or reenrollment portal, all the benefits will be available for the employee to see, at which time the employee may confirm previous choices or make new choices. It is undisputed that Hamilton entered into the portal and made various choices, including medical and vision coverage, during the open enrollment season in 2015, several months before his death. Enrollment Verification Screen for Ted Hamilton, dated May 14, 2015. The screenshot verifies that the Basic Life Insurance section is left blank. *Compare* Enrollment Verification Screen in 2015 *with* Enrollment Verification Screen in 2014.

The company reminds employees about open enrollment season, including a reminder to recheck beneficiaries, through multiple emails sent through its intranet, known as the Hi! Portal,

and through announcements sent through the mail to each employee's home address. One such email, dated May 8, 2015, included the following:

> 3. Enrolling in life insurance? Consider your beneficiaries.
>
> Whether you're planning to enroll—or re-enroll—in additional life insurance benefits, it's always a good idea to make sure you have the correct beneficiary information in the system. . . .
>
> If you're re-enrolling in these benefits, confirm all information, including pre-populated beneficiary information, is correct and up-to-date.

Open Enrollment 2015: Four things to know before OE begins at 2.

O'Neal argues that we cannot look to documents outside the Plan itself. O'Neal Initial Br. at 23. This is incorrect. The Plan alone controls only when there is a conflict with Plan documents. *CIGNA Corp. v. Amara,* 563 U.S. 421, 438 (2011) (where there is a conflict between the language of the plan summary and the plan document, the plan document controls); *Liss v. Fid. Emp'r Servs. Co.*, 516 F. App'x 468, 473 (6th Cir. 2013) ("*Amara* does not support [the plaintiff's] argument because there is no conflict between the [plan document] and the [plan summary] in the case at hand."); *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 620, n.2 (6th Cir. 2012) (concluding that the court need not address *Amara* where there is no conflict between the plan summary and the plan document). Plan documents, such as the Enrollment Booklet, direct employees to check their beneficiary designations every year. This does not conflict with the Plan language that states that "[t]he Employee may name any beneficiary he or she chooses. The Employee may also change a named beneficiary at any time by notifying Us in writing or by Electronic submission." Contrary to O'Neal's argument, Plan documents can, and should, be used to interpret Plan language.

It is uncontested that Hamilton listed O'Neal as the beneficiary for the policy year 2014, when O'Neal and the decedent lived together. O'Neal provides no evidence that leaving the beneficiary designation blank one year later in 2015 was not an affirmative choice by the

decedent. Indeed, circumstances indicate it was likely. It is uncontested that O'Neal and the decedent ended their relationship in August 2014 when O'Neal asked Hamilton to leave the shared home, which he did. O'Neal alleged domestic abuse against Hamilton in March 2015 in Kenton Family Court and received a court-ordered permanent order of protection prohibiting Hamilton from contacting O'Neal. They did not reconcile before Hamilton's death in August 2015, and were not in a relationship when Hamilton made his benefit selections in May 2015. O'Neal's claim that by leaving the beneficiary designation blank in 2015 the decedent intended to confirm his prior designation of O'Neal as the beneficiary is not consistent with the status of the relationship at that time.

While we cannot say with 100% certainty that Hamilton intended to leave the beneficiary designation blank during open enrollment in 2015, the evidence both within Humana's own records and outside of that record indicate that Hamilton did not intend to designate O'Neal as his beneficiary. The circumstances of his relationship with O'Neal at the time of the 2015 reenrollment period further corroborates that Hamilton likely intended to remove O'Neal as his beneficiary. In the year following his designation of O'Neal, the two had terminated their relationship, O'Neal had made Hamilton leave their shared home, and she had obtained a restraining order against him. When Hamilton made his benefits choices in the spring of 2015, he was provided with a prompt via the drop-down menu that O'Neal was a previously designated beneficiary. He did not choose to name her again. He did everything he could do to change his designation in 2015 to reflect that he no longer wished O'Neal to continue as his beneficiary.

For the foregoing reasons, we affirm the judgment of the district court.